Jennifer Tom

2101 Mangrove Court

Antioch, CA 94509

Phone Number: (925)698-5028

E-mail Address: jmtom3@yahoo.com

Pro Se  *Plaintiff*

FILED

DEC 03 2019

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
OAKLAND OFFICE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Jennifer Tom | Case Number: **C19-7914** |
| Pro Se | *Title of Document:* |
| Plaintiff, | Supplementary Complaint to Employment |
| vs. | Discrimination Complaint and Request, |
| Andrew Saul | for Accommodation to Participate by |
| Commissioner of Social Security | telephone going forward |
| Administration | |
| Defendant, | |

I would like to add to my initial complaint the following information and exhibits in the supplementary complaint be used together to help support my Civil case filed against the Social Security Administration.  I am also asking that I be allowed to participate via Telephone for all upcoming and future meetings, conferences, hearing and etc. I make this request because of my disabilities which are triggered by fragrances and chemicals which prevent me from being able to equally participate as others without my disabilities can, when I come into contact with

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   fragrances and chemicals I become unable to focus properly and follow conversations and
2   provide feedback based on what is being said at the time and would not be able to provide a
3   complete and full explanation of my case, since I have to be my own attorney I want equal
4   opportunity to be provided a clear and understandable explanation of my case as possible, for
5   that to be possible I need a fragrance and chemical free environment and allowing me to
6   participate by phone enables me to have a fragrance and chemical free environment so that I can
7   have an equal opportunity to clearly represent myself.

8           Therefore, I am formally requesting that the upcoming and future meetings, conferences,
9   hearing and etc. be done over the phone for the sake of fairness, as I am unable to function in an
10  environment that is contaminated with fragrances and chemicals. If I am required to be in an
11  environment that is not fragrance and chemical free I would not able to stay coherent if meetings,
12  conferences, hearings and etc. are held in person in public locations/buildings and will not be
13  able to focus properly or follow questions and issues being raised also I would not be able to
14  provide full participation in any conversations and if this case went to hearing I would not be
15  able to myself with a defense properly. During the EEO Hearing in January 2017 I had an
16  attorney because I was represented by the Union and I was not allowed to speak so my inability
17  to follow what was going on and what was being said did not matter. During the MSPB Hearing
18  in June 2019 I was my own representative meetings were done by phone and the hearing was
19  done by video conference so that I could provide myself the best defense possible by staying
20  coherent and able to focus and follow what was being said. Please also provide me with the same
21  accommodation MSPB provided me so that I can provide myself the best representation possible
22  without triggering my disabilities. Please find enclosed my treating physicians letters (Doctor
23  Lui and Doctor Young) see exhibit Medical Documents pages 46, 48, 52 and 98 on my
24  disabilities, in support of my petition the documents will show I am unable to be around
25  fragrances and chemicals because of my disabilities I am not able to stay focused and understand
26  what is being said especially when legal terminology is used and I would have a hard time keep
27  up with the conversation going on around me so that I can provide timely and accurate feedback.
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   The acts complained of in this suit concern includes but not limited to the Defendant
2   (SSA) failure to provide me with an available effective reasonable accommodation as required
3   by the Rehabilitation Act 1973 42 U.S.C. sec. 12101 and Americans with Disabilities Act. The
4   Defendant (SSA) also created a hostile work environment, abused their authority, denied me to
5   equal rights to full pay and fringe benefits, continued employment, retaliated against me and lied
6   under oath and caused me extreme physical, emotional and financial harm, distress and undue
7   hardship for no lawful reason.

8   **Background**

9   The MSPB AJ decision was based on decisions made by EEOC AJ hearing decision who
10  found in favor of SSA in error, neither EEOC AJ or the MSPB AJ took into account I was a
11  known qualified disabled Benefit Authorizer who was provided reasonable accommodations and
12  that I received successful performance appraisal while working 100% via telework under the
13  pilot telework project proving I was performing the essential functions of my job without an
14  effective reasonable accommodation. The FACT SSA acknowledged that there was no hardship
15  if I was to be approved for telework means SSA had no lawful reason to deny my request for
16  telework, in addition to the fact SSA provided telework to qualified disabled Benefit Authorizers
17  over 20 as a reasonable accommodation and over 100 under Article 39 proves that SSA did not
18  lawfully deny my reasonable accommodations request for telework the exact opposite is true.
19  SSA acknowledge that I was performing the essential functions of my job and that I received
20  successful performance appraisals while I was working 100% via telework under the pilot
21  telework project proving SSA was aware had they increased my telework days I would have
22  worked full time. Further SSA manager Carmelita Rivera acknowledge she never tried to provide
23  me with an effective reasonable accommodation of any kind let alone telework which would
24  have provided me with a fragrance and chemical free environment so my disabilities sensitivity
25  to environmental irritants, vertigo and migraines with aura  would not be triggered. MSPB AJ
26  also ignored the fact SSA had been told by EEOC AJ that the accommodations that SSA was
27  provide the air purifier, office, masks, gloves and leave were not effective and unless they could
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  prove undue hardship they would have to provide the reasonable accommodation of telework see

2  exhibit 15 in communications with EEOC AJ, and Agency Counsel, me, my Counsel for EEOC

3  cases. MSPB AJ blindly agreed with SSA's claims SSA was justified in not allowing me the one

4  reasonable accommodation that would actually provide me with a fragrance and chemical free

5  environment even though providing the requested accommodation was both reasonable and

6  would not cause an undue hardship. EEOC AJ did not look at the facts she does not address the

7  fact I was found by SSA to be a qualified disabled employee see Final Agency Decision (FAD)

8  dated January 30, 2019 page six of the decision and she does not dispute SSA acknowledged

9  there was no hardship to provide me with telework as a reasonable accommodation or the fact

10  that SSA provided telework to over 20 as a reasonable accommodation and over 100 under

11  Article 39 proves that SSA did not lawfully deny my reasonable accommodations, especially

12  since SSA management acknowledged I was a good employee and I produced quality work, it

13  was SSA's failure to effectively accommodate me which resulted in me having to take sick leave

14  due to my disabilities which increased since 2014 when I originally asked for telework as an

15  reasonable accommodation from just disabilities sensitivity to environmental irritants to now

16  include needing reasonable accommodation that would also accommodate my disabilities

17  sensitivity to environmental irritants, vertigo and migraines with aura. EEOC AJ errored in April

18  2017 because she did not take into account the fact my successful performance appraisals that

19  proved I am a qualified disabled Benefit Authorizer and that SSA did not prove undue hardship

20  meaning that SSA had no lawful reason to deny me the effective reasonable accommodation of

21  telework, MSPB AJ made the same error and she does not even acknowledged that SSA

22  requiring me to work in a building they know is not fragrance and chemical free and is under

23  construction and would trigger my disabilities and require me to take leave is NOT an effective

24  accommodation and was the result of my sick leave. SSA's inaction caused my sick leave and

25  their refusal to provide an available reasonable accommodation of telework which they provide

26  to over 20 as a reasonable accommodation and over 100 under Article 39 is evidence MSBP AJ

27  ignored when she ruled in SSA's favor and is evidence of an error in judgment. Also Office of

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    Federal Operations is wrong in allowing SSA to close SF-19-0294 internally as opposed to

2    keeping the case open and tied to the MSPB docket number SF-0752-1902-86-I-1 because they

3    are one in the same case it was the FAD from SF-19-0294 that I appealed to MSPB under and

4    when I took my EEOC case to hearing SSA did not close SSA's case number while the case

5    went to hearing or even after SSA's case is still open pending the result of a Civil Suit and I

6    believe that SSA should not be allowed to close SF-19-0294 in this case either since I am also

7    filing Civil Suit.

8           During the first conference call with the EEOC AJ, the SSA's Counsel, my Union

9    representative and I, SSA's Counsel stated that SSA had no issue with approving my Reasonable

10   Accommodations Request for Telework full-time so long as I could prove I was disabled.

11   Because the SSA's Counsel said that the SSA could provide me the requested Reasonable

12   Accommodation of Telework the EEOC AJ put the case in abeyance for two months so that the

13   SSA can provide me with documentation so that SSA could confirm I am disabled and for SSA

14   to develop a reasonable accommodation plan for me; see exhibit Communications with EEOC

15   AJ and Agency Counsel, me, my Counsel for EEO case – exhibit 1.

16          Nine days later I reported to EEOC AJ in an email dated March 19, 2015 that I

17   informed SSA management that the cubical I was in had been contaminated and I requested to be

18   placed in another cubical. After the search for another cubical to work in was completed I started

19   to clean the vacant cubical and was informed that the fan I used to keep the air circulating in my

20   area caused an employee in the opposite cubical to become sick and that for the sake of the other

21   employees health I would be removed and returned to the fifth floor where my module is located

22   and that SSA management decided I was not disabled and that they were terminating my

23   Reasonable Accommodation that placed me in a cubical on outside of my module. SSA

24   management forced me back to the fifth floor into cubicles I had already tried and were known to

25   be contaminated with fragrances and chemicals despite their actions caused detriment to my

26   health and safety. This is the second time SSA management decided to put the health and rights

27   of other employees over my health and safety, the first time was when SSA management asked

28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    me to move away from my harasser and SSA management said that my harasser  and other
2    employees had the right to wear and use fragrance products and that I had to be responsible for
3    my own health and stay away from fragrances by moving to get away from fragrances, which I
4    have been trying to do from the beginning and why I asked for the reasonable accommodation of
5    telework. I also tried numerous times to get SSA management to work with me instead of
6    harassing me, the one time SSA offered sitting down with a facilitator to discuss SSA
7    managements never ending harassment; SSA management soon after rescinded their offer
8    because I filed an EEO complaint that "Using a facilitator at this point would be contradictory to
9    the formal request." Instead of telling CREO telling SSA management to stop harassing me
10   CREO did nothing and just let my complaint go through the EEO complaint process without
11   addressing the on slot of harassment I have suffered at SSA managements hands. Harassment
12   policy which states "During the investigation into the complaint, it may be necessary for
13   management to undertake interim measures to stop any potential harassment and protect the
14   alleged victim. Interim measures include may include: • scheduling changes so the parties avoid
15   contact with each other, • moving the alleged harasser to another work location; or • placing the
16   alleged harasser on administrative leave pending the conclusion of the investigation. Interim
17   measures do not include transferring, involuntary moving, or otherwise burdening the employee
18   who complained of the harassment since such measures could constitute unlawful retaliation ".
19   Looking at the exhibits SSA's actions in my case shows SSA has forced me to move away from
20   my harassers and have failed to effectively accommodate my specific medical needs from the
21   beginning. EEOC AJ responded to my report stating she could not do anything to help me
22   because "…have not yet made an evidentiary determination…" and she advised SSA's Counsel
23   to talk with SSA management and find out what was going on and provide legal advice to SSA
24   management, see exhibit Communications with EEOC AJ and Agency Counsel, me, my Counsel
25   for EEO case - exhibit 3

26        Then twenty two days later my Union Representative sent an email on April 1, 2015 to
27   SSA's Counsel reminding them that SSA management rescinded my Reasonable
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  Accommodation and that SSA managements actions were based on what they felt was best for
2  the unit and not best for my health, he also reported that since the move back to the fifth floor I
3  started missing significantly more days of work and that SSA's Counsel had still not met it's
4  obligation to provide me with the documents SSA needs so that SSA could finally find me
5  disabled as my treating physicians determination so I could finally be provided an effective
6  Reasonable Accommodation, see exhibit Communications with EEOC AJ and Agency Counsel,
7  me, my Counsel for EEO case - exhibit 4.

8      After my Union Representative reminded SSA's Counsel of their obligation they finally
9  sent me a Reasonable Accommodation Medical Inquiry Form on April 2, 2015 they said "OGC
10 has been working closely with CREO to come up with an appropriate document to provide your
11 doctor. We believe the attacked document provides the clearest explanation of the documentation
12 CREO and your managers need to complete the RA process." SSA's Counsel does not address
13 SSA's managements revoking of the approved reasonable accommodation that placed me in a
14 cubical outside of my module or the fact that no efforts were being done to develop and
15 implement a reasonable accommodations plan as ordered by EEOC AJ during our initial
16 conference call, see exhibit Communications with EEOC AJ and Agency Counsel, me, my
17 Counsel for EEO case - exhibit 5.

18     On May 10, 2015 I sent an email rebutting SSA's Counsel claims that the SSA
19 management made any attempt to develop or implement a reasonable accommodations plan for
20 me as ordered by EEOC AJ during our March 10, 2015 conference call or that SSA management
21 or CREO contacted me or my Union Representative after I provided SSA's Counsel the
22 completed Reasonable Accommodation Medical Inquiry Form on April 7, 2015. In the May 10,
23 2015 email I attached my rebuttal to SSA's false claims that they interacted with me and their
24 false claims including the false claim that SSA management offered me a position that would
25 allow me to telework three to four days a week and SSA's claim that did not accept the job that
26 would have allowed me to telework three to four days a week, it is important to note that SSA's
27 Counsel does not dispute my rebuttal of SSA's false claims and my assertions that the report was
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

essentially full of false statements to the EEOC AJ. It is also important to note that SSA's document show that SSA had no issues with me increasing my telework days, further proof there is no hardship suffered by SSA when they allow qualified disabled employees to telework full time, see exhibit Communications with EEOC AJ and Agency Counsel, me, my Counsel for EEO case - exhibit 6. The fact SSA management and SSA's Counsel were willing to make false statements/outright lie to EEOC AJ shows SSA is willing to provided falsify information to make it appear they are abiding by the law and EEOC AJ orders. The lies made to EEOC AJ shows SSA statements should not be taken at face value and that SSA should be required to back up their claims with documented evidence like I have done before SSA word is taken as fact because the evidence at hand shows SSA's word is not trustworthy and should not be given the benefit of the doubt.

On May 26, 2015 my Union Representative sent an email to EEOC AJ clarifying the issues he was trying to bring to her attention notably the fact that SSA's Counsel, my Union Representative and me have had no communications beyond my receipt of the Reasonable Accommodations Medical Inquiry Form and my sending back the completed Reasonable Accommodations Medical Inquiry Form. He also raised issues with the false statements SSA's Counsel sent to EEOC AJ, and me. Also, that without SSA's Counsel contact there was no possibility for both parties to attempt to develop and implement a reasonable accommodations plan as ordered by the EEOC AJ, and that because SSA management made no attempts to accommodate me in the two months the case was in abeyance we should move forward with the case, see exhibit Communications with EEOC AJ and Agency Counsel, me, my Counsel for EEO case – exhibit 7.

On May 26, 2015 I also sent an email to EEOC AJ to confirm absolutely no contact between SSA's Counsel or CREO staff occurred between my Union Representative and I occurred to develop and implement a reasonable accommodation plan as ordered by EEOC AJ had occurred. The only contact was SSA's Counsel sent me a form they said if completed would provide SSA with the necessary information they to determine I am disabled. The initial

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1 | conference call with the EEOC AJ, SSA's Counsel claimed the only reason I was not approved
2 | for the requested reasonable accommodation of telework was because the SSA was not able to
3 | find I was disabled, which is why the EEOC AJ put the case in abeyance so that the Agency
4 | could find I was disabled and develop and implement a reasonable accommodations plan so that
5 | I could be approved for the requested reasonable accommodation of telework. Neither my Union
6 | Representative or I were contacted during the two months SSA claimed to be working toward
7 | developing or implementing a reasonable accommodations plan. It is important to note that
8 | SSA's Counsel never disputed the fact we were not contacted. I also asked EEOC AJ that since
9 | SSA's Counsel claimed I was offered a position to work via telework three to four days a week
10 | that I be permitted to telework three to four days a week while the discovery process was under
11 | way, since SSA's Counsel claimed to have made the offer I was accepting it. I never received a
12 | response from SSA's Counsel or CREO on my acceptance of their alleged offer to work via
13 | telework three to four days a week, see exhibit Communications with EEOC AJ and Agency
14 | Counsel, me, my Counsel for EEO case – exhibit 8. The very fact SSA claimed to be able to
15 | increase my telework up to four days a week is evidence that telework is an effective reasonable
16 | accommodation and that no hardship is suffered by the SSA, it is important to note I could have
17 | changed my work schedule to 4/11 which meant I worked four days a week eleven hour days
18 | which would have enabled me to work 100% via telework which is the reasonable
19 | accommodations I have been asking for since 2014.

20 |      On June 6, 2015 I responded to EEOC AJ's email asking were the parties were as far
21 | discovery and SSA's Counsels request to put the case on hold again and SSA's Counsel's
22 | request that I amend my EEO case to include the request for the reasonable accommodations of
23 | telework. In my written response attached to the email, I showed that my request for the
24 | reasonable accommodations request for telework was already well documented in the Report of
25 | Investigation for SF-14-0624 (ROI) and I also disputed the fact that a change of my first line
26 | managers was material to the reasonable accommodations and case process, since my second line
27 | manager Mireille Hanft was the manager making the reasonable accommodations decisions. It is
28 | TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    important to note that during the initial conference call with EEOC AJ, SSA's Counsel and my
2    Union Representative, I; I had asked for reasonable accommodations of telework and SSA's
3    Counsel said I could be approved for the reasonable accommodations of telework as long as I
4    was disabled. I also contested the issues of the case being limited or reduced because SSA's
5    Counsel claimed the issues I raised were not already covered in the Report of Investigation. I
6    pointed out that SSA's Counsel was again misrepresenting the facts to EEOC AJ and that the
7    case should not be prevented from moving forward no more delays should be granted, because I
8    continued to suffer attacks due to SSA's inactions and refusal to provide me with an effective
9    reasonable accommodation during the delays that had already been imposed by EEOC AJ.
10   EEOC AJ put the case in abeyance to give the SSA time to obtain the medical documentation
11   SSA claimed to have needed to render a disability finding and so that SSA could develop and
12   implement a reasonable accommodation plan. SSA failed to abide by EEOC AJ's orders and did
13   not use the time to develop or implement a reasonable accommodations plan as ordered. SSA
14   management had made no attempts to provide me with an effective reasonable accommodation
15   instead they revoked reasonable accommodations which caused me further physical, emotional
16   and financial harm and duress. It is important to note that SSA's Counsel did not dispute the
17   facts I raised as being false or dispute my report of the true actions SSA's management took.
18   Once again proving SSA's Counsel and SSA management provided false statements and lied to
19   EEOC AJ without hesitation, and that SSA at all levels were acting in bad faith and were not
20   credible witness of facts and events as they actually occurred, see exhibit Communications with
21   EEOC AJ and Agency Counsel, me, my Counsel for EEO case – exhibit 9 and written response
22   starting on page 6.

23          On June 9, 2015 I received a response form EEOC AJ on my request for her to step in
24   and force the SSA to honor its offer to allow me to telework three to four days a week which
25   they alleged to have offered me per SSA's Counsel email dated May 8, 2015 "Pursuant to your
26   March 10, 2015 order, we are providing the attached updated regarding 'where the parties are as
27   far as developing and implementing a reasonable accommodation plan for Ms. Tom'" attached
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  document dated May 8, 2015 see exhibit Communications with EEOC AJ and Agency Counsel,
2  me, my Counsel for EEO case – exhibit 6 on last page. EEOC AJ told me that she could not
3  order the SSA to do anything because she did not have the authority to do so because she did not
4  find they had violated anything and suggested my Union Representative and I continue try and
5  work something out with the SSA, see exhibit Communications with EEOC AJ and Agency
6  Counsel, me, my Counsel for EEO case – exhibit 10. My Union Representative and I constantly
7  tried to get SSA management, CREO and SSA's Counsel to work with us to provide me with an
8  effective reasonable accommodation but the SSA limited the reasonable accommodations they
9  would provide me to accommodations within SSA occupied buildings on non-telework pilot
10 days, SSA did not make a good faith effort to provide me with an effective reasonable
11 accommodation of telework which the Agency had available and I was aware SSA had provided
12 to other qualified disabled benefit Authorizers, SSA refused to allow me to try telework as a
13 reasonable accommodation they limited the reasonable accommodations I was approved for in
14 regards to my physically located to locations within SSA occupied building. James Dokko my
15 third line supervisor who was responsible for my reasonable accommodations request for
16 telework testified that he never explored where a Benefit Authorizer could telework full time as a
17 reasonable accommodation but he believed it was possible, per MSPB Hearing Transcript day 2
18 James Dokko page 20 lines 20-25 and page 21 lines 1-12. It is important to note that SSA's
19 National Reasonable Accommodations Coordinator (NRAC) based their decision solely on
20 SSA's management's recommendation and did not do their job and confirm managements claims
21 answering the 800 number was an essential job function and that Benefit Authorizers could not
22 be approved for the Reasonable Accommodation of Telework "Ms. Stenzel stated she does not
23 recall if 800 calls were determined to be an essential function of the job or to the extent to which
24 she considered the issue." See exhibit "Statement From NRAC decision maker…" SSA based
25 their denials of my reasonable accommodations based on James Dokko's opinion that my
26 requests should be denied, the fact he acknowledges never having explored where or not a
27 qualified disabled Benefit Authorizer could be approved for the Reasonable Accommodation of
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  telework proves that SSA management was not following actual policy or laws when SSA issued
2  denials to my reasonable accommodations request for telework. It also proves that SSA did not
3  following reasonable accommodations policy and ADAAA or the Rehabilitation Act of 1973
4  SSA was not trying to accommodate my known limitations because they continued to require
5  that on my non-telework days I work in buildings they knew were not fragrance and chemical
6  free per MSPB Hearing Transcript day 2 James Dokko page 3 lines 14-18 and page 6 lines 21-25
7  and page 7 lines 1-25 and page 8 lines 1-25. The only reason I was teleworking was because I
8  was accepted into the pilot telework program. On days I was not covered under the pilot
9  telework program SSA required I work in the SSA occupied building(s) SSA knew are not
10 fragrance or chemical free per MSPB Hearing Transcript day 1 Kris Chamremlaksa page 23
11 lines 11-13 and page 24 lines 23-25 through page 25 lines 1-5, per MSPB Hearing Transcript day
12 1 Carmelita Rivera page 105 lines 5-25 and page 106 lines 1-6 and page 121 lines 21-23, per
13 MSPB Hearing Transcript day 1 James Dokko page 206 lines 13-23 and page 220 lines 18-25
14 and page 221 lines 1-21 and page 227 lines 1-25, per MSPB Hearing Transcript day 2 James
15 Dokko page 3 line 14-18 and page 8 line 1-25, per MSPB Hearing Transcript day 2 Debby Ellis
16 page 118 lines 17-20 and page 122 lines 13-15 and page 137 lines 12-18 and page 137 line 5-11
17 and page 144 lines 2-18. Although SSA's Counsel reported in their May 8, 2015 update that I
18 was offered to telework three to four days a week they never allowed me to telework beyond
19 what was allowed under the pilot telework program parameters even though they knew since
20 2014, that SSA buildings could not provide me with an effective reasonable accommodation of a
21 fragrance and chemical free environment per SSA Medical officer see exhibit included page 2
22 and Leslie Kern Operations Manager had said in 2014"The SSA Medical Officer also noted that
23 even if you are eventually found to be an individual with a disability under the Rehabilitation
24 Act, your request accommodation is impractical in most public buildings. As the FHFB is a
25 building which is used by many people, we cannot accommodate a scent free work place. You
26 may contact CREO directly for more information." proving that SSA's has been aware since at
27 least 2014 that any accommodation that forced me to work in an SSA occupied building would
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   not provide me with a fragrance and chemical free environment, the logical next option should

2   have been to have me telework since my working environment would be my home which is

3   fragrance and chemical free and would have been in line with SSA policy Reasonable

4   Accommodations Request Involving Fragrance Sensitivity Policy exhibit. It also proves that the

5   SSA's allegations that SSA believed to have effectively accommodated me within the building is

6   a lie and SSA's claims contradict SSA's Medical Officer's determination that SSA occupied

7   building and other public places could not provide me with fragrance or chemical free

8   environment, James Dokko acknowledges that he was aware of SSA's Medical officers

9   assessment of SSA occupied buildings inability to provide me with a fragrance and chemical free

10  environment, James Dokko agreed with SSA Medical Officers assessment per MSPB Hearing

11  Transcript day 1 page 220 lines 18-22. The fact the one available reasonable accommodation of

12  telework that would provide me with a fragrance and chemical free environment is the only

13  reasonable accommodation the SSA refused to allow me to try despite SSA knowing SSA

14  occupied buildings could not provide me with a fragrance and chemical free environment and

15  SSA allowing other Benefit Authorizers to telework five days a week, shows SSA did not act in

16  good faith and that they did not make abide by the ADAAA and Rehabilitation Act of 1973 to

17  provide me with an available effective Reasonable accommodation and that SSA did not provide

18  me with a reasonable accommodations that would accommodate my known limitations, even

19  though they knew I am a qualified disabled employee per SSA Final Agency Decision (FAD)

20  dated January 30, 2019 see labeled page 6 on upper right hand side  included in my initial civil

21  complaint "To establish a *prima facie* case of disability discrimination under Rehab Act, an

22  individual must show (1) she is an "individual with a disability," (2) she is qualified for the

23  position held or desired;..." and "Regarding the second prong, while the record does not contain

24  evidence pertaining to Complainant's performance, there is no doubt that she was in her position

25  for roughly ten years. Therefore, we find she is qualified for the position she held and established

26  the second prong of her case. See Kohner v. Dep't of Transp., EEOC Appeal No. 0120110334, 1

27  (sept. 14, 2012) (affirming AJ's decision finding complainant was a 'qualified' individual with a

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  disability by virtue of successfully performing his job)." My successful performance appraisals
2  are also included in my initial civil complaint. It is important to note that SSA's National
3  Reasonable Accommodations Coordinator (NRAC) based their decision solely on SSA's
4  management's recommendation and did not do their job and confirm managements claims
5  answering the 800 number was an essential job function and that Benefit Authorizers. NRAC
6  also failed to confirm my reports that SSA was already approving Benefit Authorizers the
7  Reasonable Accommodation of Telework proving answering SSA's 800 number was not an
8  essential function as SSA management alleged to NRAC "Ms. Stenzel stated she does not recall
9  if 800 calls were determined to be an essential function of the job or to the extent to which she
10 considered the issue." See exhibit "Statement From NRAC decision maker..." If SSA NRAC
11 had done their job and based their decisions on an  independent review of SSA policies and
12 practices, NRAC would have found out that SSA had approved 20+ other qualified disabled
13 Benefit Authorizers the Reasonable Accommodation of telework since 2016 NRAC would have
14 also found ample evidence showing not only had SSA determined that Benefit Authorizer could
15 perform the essential job functions while working 100% via telework. NRAC would have also
16 found  when  SSA  approved  qualified  disabled  Benefit  Authorizers  the  Reasonable
17 Accommodation of telework SSA suffered no hardship! Evidence I provided Office of Federal
18 Operations definitively proves that allowing a Benefit Authorizer to telework five days a week
19 would not cause the SSA any hardship, the fact is SSA has approved over 20 qualified disabled
20 Benefit Authorizers the Reasonable Accommodation of Telework since at least 2016 and SSA
21 has approved over 100 Benefit Authorizers Article 39 Work At Home by Exemption since at
22 least 2015, important to note that there is one Benefit Authorizer who is in the pilot program who
23 is virtually working "1 of these BAs is actually a longer term virtual detail" see exhibits provided
24 in my initial complaint dated May 17, 2019 labeled "Agency's Response to Appellant's Request
25 for Production #6 as amended in the Board's April 25, 2019 Order" and dated May 3,
26 2019"Agency's Response to Appellant's Request for Production #6 as amended in the Board's
27 April 25, 2019 Order" proving SSA can permit disabled Benefit Authorizer and or non-disabled
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    Benefit Authorizer to telework full time without harm to the SSA. The documents also prove

2    there is no lawful reason SSA refused to provide me with the reasonable accommodation of

3    telework. My report to EEOC AJ prove SSA's management took actions that triggered my

4    disabilities instead of taking actions to develop and implement a reasonable accommodations

5    plan as they were ordered to do by the EEOC AJ during the initial conference call and that SSA

6    has lied about being willing to allow me to telework three to four days a week. I believe the

7    reason SSA lied about offering me a job that would enable me to telework three to four days a

8    week to make SSA appear as though SSA was abiding by EEOC AJ's orders trying to reasonably

9    accommodate me and make it appear to EEOC AJ that I was not working with SSA. I begged

10   SSA to honor it's fictitious offer to allow me to telework three to four days a week and they

11   never honored the fictions offer and never responded to my requests for them to honor my

12   acceptance, proves SSA lied about the offer to enable me to telework three to four hours a week.

13   Based on SSA's actions it appears to me that SSA did not intend to abide by EEOC AJ's order to

14   develop and implement a reasonable accommodations plan just make it appear as though SSA

15   made an effort to. It is important to note that SSA's Medical Officer told SSA management on

16   July 2014 almost a year before this case was bright to EEOC AJ's attention that "Even if Ms.

17   Tom is eventually found to be an individual with a disability per the RA, the requested

18   accommodation of scent free work environment is impractical in most public buildings.

19   Furthermore, Ms. Tom is unlikely to avoid similar exposures if she visits public places such as

20   shopping malls, restaurants, grocery stores and numerous others." see SSA medical  officer

21   decision page 2 of 2. So SSA's refusal to the approve the RA of telework the one reasonable

22   accommodation that would enable me to work outside of an SSA occupied building and would

23   actually provide me with a fragrance and chemical free environment proves SSA had no

24   intention making a good faith effort to develop and implement an effective reasonable

25   accommodation plan. Every time I begged SSA to honor SSA's alleged offer to allow me to

26   telework three to four days a week my please went unanswered and I was forced to continue to

27

28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  suffer physically, mentally and financially, see exhibit Communications with EEOC AJ and
2  Agency Counsel, me, my Counsel for EEO case – exhibit 10.

3        On June 10, 2015 EEOC AJ sent an email and the email contained the document "Order
4  Settling Discovery Schedule" which found that I was not required to amend my request to
5  include my request for telework as a reasonable accommodation because that request was
6  included in the complaint already. EEOC AJ notes "The Agency is required to engage in the
7  interactive process and propose alternatives if Complainant's requested accommodation is not
8  viable; telework was a very obvious alternative. Ms. Tom is not required under the ADAAA to
9  continuously file new, formal paperwork every time a new option is considered" and EEOC AJ
10  noted that the efforts to implement a reasonable accommodations plan has been unsuccessful she
11  does not note that my Union Representative and I reported no communications occurred with
12  SSA's Counsel or CREO to try and develop and implement a reasonable accommodation plan as
13  ordered in March 10, 2015 conference call but EEOC AJ did referred us to mediation to try and
14  get SSA to the table to talk with me and my Union Representative to try and resolve my needs
15  for an effective reasonable accommodation as fast as possible. see exhibit Communications with
16  EEOC AJ and Agency Counsel, me, my Counsel for EEO case – exhibit 11.

17        On August 26, 2015 SSA's Counsel, my Union Representative and I with the assistance
18  of a mediator agreed to among other things excuse me from answering SSA's 800 number aka
19  SPIKE, I was on the priority list when telework program expanded and the approved reasonable
20  accommodation of Liberal leave would continue also I would not be asked to provide a
21  additional doctors documentation when I was absent from work because my disability sensitivity
22  to environmental irritants was aggravated. See exhibit email subject: Interim Agreement in Tom
23  v SSA numbers 4, 5 and 6. It is important to note that SSA's Counsel agreed to excuse me from
24  answering SSA's 800 number aka SPIKE proving that it is not an essential function of the
25  Benefit Authorizer job because SSA's Counsel would not have agreed to any reasonable
26  accommodation that did not meet reasonable accommodations policy. I would like it noted that
27  the SSA did not abide by the agreement whole mediated agreement and that each time I raised
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    reported SSA did not abide by the agreement I could not get anyone from SSA to talk to me or
2    my Union Representative about SSA breaching the mediated agreement I was also unable to get
3    the EEOC AJ to get SSA to honor the mediated agreement. I was forced to file multiple EEO
4    cases in addition to this case, I have nine additional cases against SSA (my last EEO case was
5    bifurcated creating the tenth case) because of the continued disability discrimination, harassment,
6    abuse of authority, retaliation, and SSA's refusal to provide me with an effective reasonable
7    accommodation. Also the document from SSA's Counsel to EEOC AJ dated November 30, 2015
8    where SSA's Counsel states "Pursuant to the August 27, 2015 interim agreement, we are
9    providing an update regarding where the parties are in developing and implementing a
10   reasonable accommodations plan for Ms. Tom. Since the August 2015 mediation, management
11   has continued to work with Ms. Tom **to provide an effective accommodation for her medical**
12   **condition.**"(bolded for emphasis) The bolded portion of SSA's Counsel statement proves the
13   SSA found I was a qualified disabled Benefit Authorizer at least as far back as 2015 and based
14   on SSA finding I am a qualified disabled Benefit Authorizer SSA provided me with reasonable
15   accommodations which SSA claimed were effective reasonable accommodations for my medical
16   condition/disability including but not limited to being excused from SPIKE on two separate
17   occasions, provided an air purifier, Liberal Leave, was moved to different locations (over 26)
18   within SSA occupied building to work in, I was allowed to start telework pilot once a week
19   telework and was one of the first employees to be converted to the single device set up. SSA's
20   Counsel acknowledges in documentation provided to EEOC AJ that SSA knows I am a known
21   qualified disabled employee and that SSA would continue to work with me to provide me with
22   an effective reasonable accommodation, SSA Counsel found I am a qualified disabled employee
23   but failed to note that SSA was informed by an SSA Medical Officer that SSA buildings would
24   be unable to provide me with a scent free work environment echoed by SSA Operations Manager
25   Leslie Kern per "The SSA Medical Officer also noted that even if you are eventually found to be
26   an individual with a disability under the Rehabilitation Act, your request accommodation is
27   impractical in most public buildings. As the FHFB is a building which is used by many people,
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    we cannot accommodate a scent free work place. You may contact CREO directly for more
2    information." Ms. Kern notes that CREO was also aware since 2014 that SSA would be unable
3    to provide me with a scent free workplace in the building, meaning CREO and SSA management
4    should have concluded telework would be a viable reasonable accommodation that should have
5    been offered since it was an available reasonable accommodation, which caused SSA no
6    hardship to provide see exhibits provided with my initial complaint which shows over 120
7    Benefit Authorizers were excused from SPIKE and allowed to telework full time five days a
8    week for months and years as early as 2015. It is important to note that the first laptop I was
9    given when I was selected for the pilot telework program was a shared laptop that I received
10   when I started pilot telework back in January 2014, and the second laptop was a single device set
11   up laptop I received in 2015 more than year after the first laptop, important to note the second
12   laptop was replaced soon after I had reported issues with it proving SSA can provide laptops that
13   don't affect my disability and that the first laptop would have been replaced regardless because
14   SSA converted from PC's to laptops see January 19, 2017 EEOC Hearing Transcript Volume 2
15   page 320 lines 2-25 and page 321 lines 1-10. SSA provided the second laptop to me soon after I
16   reported problems with the first laptop proving that SSA can provide me with laptops that have
17   not been contaminated with fragrances and chemicals if SSA took the proper precautions also
18   important to note the second laptop was perfectly fine like the first laptop it was not
19   contaminated. When I received the second laptop I asked for permission to keep the second
20   laptop with me to prevent the second laptop from being contaminated while the laptop was left in
21   the building while I was out sick which is how the first laptop became contaminated, my request
22   to keep the second laptop with me was denied. Had SSA allowed me to take the second laptop
23   home when I went home sick I would have never needed a third laptop! Unlike the first two
24   laptops SSA provided me the third laptop SSA gave me was contaminated since the first day I
25   received it and was clearly used, see MSPB Hearing Transcript day 1 James Dokko page 163
26   lines 11-18 and MSPB Hearing Transcript day 2 James Dokko page 68 lines 3-19 and page 69
27   line 18-22 and page 70 lines 1-21 and page 73 lines 3-25 page 74 lines 1-3 and lines 18-24, see
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

hearing testimony see January 19, 2017 EEOC Hearing Transcript Volume 2 James Dokko page 320 lines 2-16 and page 321 lines 1-10 and lines 19-25 and page 322 lines 1-25 and page 323 lines 1-25. It is important to note that I was not allowed to take the second laptop "first single device set up" laptop with me when I went home; had I been allowed to take the second laptop home I would not have needed a third laptop because the second laptop would been in my home which is a fragrance and chemical free environment. James Dokko acknowledges that I requested to be allowed to take the second laptop home so that it would not be contaminated like the first one had been when the laptop was left in the building which is a chemical and fragrance environment, per MSPB Hearing Transcript day 2 page 69 lines 18-22 and James Dokko acknowledges that I had reported the second laptop was contaminated after having if for a few months and that I had reported the third laptop was contaminated since the first day I received it per MSPB Hearing Transcript day 2 page 70 lines 1-17. I would like it noted that all SSA staff was going to be provided a single device set up per January 19, 2017 EEOC Hearing Transcript Volume 2 James Dokko testimony page 321 lines 4-10 "So around that time we were going through a workstation replacement, so we were replacing all of our desktops computers with laptops, which is called a single device setup, which would be a laptop you put in a dock on a desk and use that as your desktop. If you did telework, you would undock that laptop and use that same laptop to telework.". It is important to note that Debby Ellis states that management received medical documentation that informed SSA that my condition was sever, per MSPB Hearing Transcript day 2 Debby Ellis page 133 lines 5-12. SSA policy defines Reasonable Accommodation as a modification or adjustment to a job or change in the working environment for qualified disabled employees to enjoy the same benefits and privileges as employees without disabilities and Undue Hardship is a specific accommodation that would require significate difficulty or expense. It is important to note that SSA had determined I was a qualified disabled employee per documents provided by SSA's Counsel to EEOC AJ providing an update pursuant to the March 10, 2015 EEOC AJ order dated May 8, 2015 in exhibit 6 of Communications with EEOC AJ and Agency Counsel, me and my Counsel for EEO case and in a Final Agency

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1 | Decision dated January 30, 2019 page 6 of the decision, included as an exhibit with my initial
2 | complaint. SSA providing me with reasonable accommodations is further evidence that SSA
3 | found I am a qualified disabled employee among other things SSA provided me with an air
4 | purifier that was over one thousand dollars, I was moved over 26 times and was provided masks
5 | and glove, Liberal Leave and I was approved the maximum advanced sick leave the maximum
6 | advanced annual leave, the maximum FMLA leave and LWOP I was also approved for the
7 | voluntary leave transfer program. SSA only provides reasonable accommodations to qualified
8 | disabled employees per MSPB Hearing Transcript day 1 Carmelita Rivera page 133 lines 10-15.
9 | Because SSA provided over 20 other qualified disabled Benefit Authorizers with the reasonable
10 | accommodation of Telework full time and SSA approved 100 Benefit Authorizers Article 39
11 | approval and has one non-disabled Benefit Authorizer who was working "a long term virtual
12 | detail" proves there is no undue hardship on SSA to allow Benefit Authorizer to telework full
13 | time especially if the Benefit Authorizer who is asking for full time telework is a qualified
14 | disabled employee see MSPB Hearing Transcript day 2 page 153 lines 16-22. Debby Ellis
15 | acknowledges that Benefit Authorizers were allowed to telework on SPIKE days proving SPIKE
16 | is not an essential function of the Benefit Authorizer job as she originally claimed to EEOC AJ at
17 | the January 19, 2017 hearing, see MSPB Hearing Transcript day 2 page 153 lines 16-22 and 155
18 | lines 10-25 and page 156 lines 1 and page 157 lines 4-7 lines 23-25 and page 158 line 1 and lines
19 | 13-17 and page 159 lines 3-25 and page 160 lines 5-10 and see exhibit provided with initial
20 | complaint from SSA Counsel dated May 17, 2019 and May 3, 2019. Per January 19, 2017 EEOC
21 | Hearing Transcript Volume 2 page 356 lines 8-14 no one in SSA has the authority to excuse an
22 | employee from performing an essential function of their job. Per January 19, 2017 EEOC
23 | Hearing Transcript Volume 2 page 300 lines 8-25 and page 301 lines 1-3 Debby Ellis
24 | acknowledges that module managers decide who SPIKE's or does not SPIKE, further evidence
25 | that SPIKE is not an essential function of the job because SSA management can decide who does
26 | and does not SPIKE. I would also like it noted that I was found to be a qualified disabled
27 | employee more than once first when I was approved the air purifier (costing $1,200.00) and
28 | TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  because I received successful performance appraisals throughout my 10 year career per SSA
2  Final Agency Decision (FAD) dated January 30, 2019 see labeled page 6 on upper right hand
3  side, a copy of my successful performance appraisals and the FAD dated January 30, 2019 are
4  included in my initial complaint exhibits and see January 19, 2017 EEOC Hearing Transcript
5  Volume 2 page 284 lines 6-25 and page 285 lines 1-10. Unfortunately, the reasonable
6  accommodations SSA provided me were not working per EEOC AJ's own statement "If
7  Complainant is credible and her symptoms are genuine, then the current accommodations are not
8  working and the Agency must consider full-time teleworking. To justify not allowing
9  Complainant to telework full time, the Agency must demonstrate undue hardship" see exhibit
10 Communications with EEOC AJ and Agency Counsel, me, my Counsel for EEO case – exhibit
11 15 and see exhibit Communications with EEOC AJ and Agency Counsel, me, my Counsel for
12 EEO case – exhibit 12 on page 10 the reasonable accommodation decision from Debby Ellis that
13 shows she denied my reasonable accommodations request for permanent telework but I was
14 approved other reasonable accommodations request to be moved within SSA occupied buildings
15 and she lists the other approved and provided reasonable accommodations including but not
16 limited to moving me to different floors and different cubicles, allow me to telework two days a
17 week  just ahead of the other pilot teleworkers, an air purifier, excused from performing SPIKE,
18 face masks; I was also provided the Reasonable Accommodations of Liberal Leave eventually
19 provided gloves. SSA is well aware I am a qualified disabled employee and SSA is required to
20 provide me with a effective reasonable accommodation that would enable me to return to work
21 full time per Rehabilitation Act of 1973 and 29 C.F.R. 1630.1 provides that the primary purpose
22 of Title I of the ADA, as amended by the ADAA, is to provide equal employment opportunities
23 for individuals with disabilities as long as SSA does not suffer an undue hardship. SSA should
24 provide reasonable accommodations that permitted me to keep working rather than choosing to
25 force me to take leave as a reasonable accommodation. Leave removes an employee from the
26 workplace and therefore denies the employee the opportunity to keep working which is not a
27 reasonable accommodation, which is why I continued to begged SSA to approve my reasonable
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  accommodations request for telework, it was clear after moving me around over 26 times to
2  different locations within SSA occupied buildings did not provide me with a fragrance and
3  chemical free work environment, a fact SSA's Medical Officer determined in 2014 "Even if Ms.
4  Tom is eventually found to be an individual with a disability per the RA, the requested
5  accommodation of scent free work environment is impractical in most public buildings.
6  Furthermore, Ms. Tom is unlikely to avoid similar exposures if she visits public places such as
7  shopping malls, restaurants, grocery stores and numerous others." which SSA was told, see SSA
8  medical officer exhibit page 2 of 2. SSA's Leslie Kern Operations Manager confirmed SSA
9  Medical Officer's determination stating "As stated in the notice you received, the Agency is not
10 able to provide a scent free workplace for any employee." SSA's Medical Officer assessment of
11 my disability is accurate, public places don't provide fragrance or chemical free environments
12 which is why I am homebound and why SSA's calls for me to take public transportation to work
13 so that I can then ask for leave in person is extremely unreasonable and puts me in physical harm
14 because I would not survive the ride to the building and would have to call out sick because I
15 could not survive the drive in and I could be raped or killed once I lost consciousness. In 2014 I
16 brought my formal requests for an effective Reasonable Accommodation to SSA and since 2014
17 to now 2019 my quality of life has plummeted because SSA's has refusal to provide me with an
18 effective Reasonable Accommodation of telework which they provided to more than 120 other
19 qualified disabled Benefit Authorizers. SSA's refusal to effectively accommodate me has made
20 my disability to worsen and caused me to also need reasonable accommodations for vertigo,
21 migraines with aura and sensitivity to environmental irritants. Although the disabilities I now
22 need accommodated have increased SSA continues to believe the accommodations they have
23 been providing me since 2015 are still equally effective as the reasonable accommodation of
24 telework, which no reasonable person would conclude.  Since my initial formal reasonable
25 accommodations request made in 2014 the continued assaults on my immune system triggering
26 my disability sensitivity to environmental irritants my health worsened and I was subsequently
27 diagnosed with vertigo in 2015 and my migraines with aura became much worst. If SSA had
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  acted in accordance with the Rehabilitations Act of 1973, ADAA and Reasonable
2  Accommodations Policy in my case as they had for the 120 plus other qualified disabled Benefit
3  Authorizers whom were approved to telework full time five days a week, I would not have had to
4  take leave, I would not have ended up with vertigo and my migraines with aura would not have
5  gotten worst and I would never have been fired for taking sick leave.
6      On November 30, 2015 I sent an email to EEO AJ to dispute the false statement SSA's
7  Counsel claimed occurred during mediation and also after mediation was conducted. SSA's
8  Counsel lied about multiple facts which I noted in my written rebuttal starts on page 3 of exhibit
9  Communications with EEOC AJ and Agency Counsel, me, my Counsel for EEO case – exhibit
10 12. SSA's Counsel has provided false information to EEO AJ on at least three occasions this
11 event being the third time. SSA management and Counsel has acted in bad faith see exhibits 3,
12 10 and 14 of Communications with EEOC AJ and Agency Counsel, me, my Counsel which
13 show on at least three separate occasions SSA's Counsel and SSA management lied to the EEOC
14 AJ and should be proof SSA's Counsel and management should not be taken at their word. SSA
15 and SSA's Counsel does not dispute my rebuttal to any of the false claims they made proving
16 that SSA knew they had been caught in a lie, the fact EEOC AJ continued to allow SSA's
17 Counsel and SSA staff to lie to her emboldened them to continue to lie with impunity as
18 evidence by the lies SSA staff made during the EEO hearing. The documents in exhibit
19 Communications with EEOC AJ and Agency Counsel, me, my Counsel for EEO case exhibit 14
20 and exhibit 12 page 13 of 15 foot note 1, shows SSA management acted in bad faith when in
21 October 2016 they revoked the approved Reasonable Accommodation of Liberal Leave and then
22 threatened me with being charged with AWOL, SSA management told me that because the
23 approved Reasonable Accommodation of Liberal Leave was revoked SSA would now be within
24 their right to refuse to approve my LWOP requests and charged me with AWOL which caused
25 me physical, emotional and financial harm, I was already under a lot of duress and living under
26 the constant threat of losing my job increased the strain on my mind and body. SSA management
27 failed to provide me with an effective reasonable accommodation which is why I was forced to
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

take leave as in the first place. SSA was aware that even with the air purifier I was reporting having problems of fragrances and chemicals in the offices I was provided see MSPB Hearing Transcript day 2 page 130 lines 22-25. SSA chose to provide the Reasonable Accommodation of Liberal Leave instead of approving my Reasonable Accommodation of Telework because James Dokko SSA manager stated "we provided an accommodation that **I feel was appropriate**, which was a locked office, air purifier, air guard, flexible leave" (bolded for emphasis) see MSPB Hearing Transcript day 1 page 206. It is important to note that SSA was perfectly fine with me taking sick leave so long as I reported to SSA's building and aggravated my disabilities and then asked for permission to go home sick per MSPB Hearing Transcript day 1 page 227 lines 2-25 and 228 lines 1-25 and page 229 line 1.Although James Dokko acknowledges that SSA cannot protect me from scents and can only limit my exposure in SSA buildings (see MSPB Hearing Transcript day 2 page 6 lines 21-25 and page 7 lines 1-4). James Dokko stood by his decision to continue to refuse to recommend I be allowed to telework which would have enabled me to eliminate my exposure to chemical and fragrances in my environment even though James Dokko was told by my first line supervisor Kris Chamrernlaksa that Kris recommended that I be approved for telework five days a week        see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11. James Dokko made his own medical determinations, which he used to base his recommendations to upper SSA management. James Dokko's own medical determinations that SSA could provide me with a reasonable accommodation with in SSA's buildings that would be as effective as telework in providing me with a fragrance and chemical free work environment contradicted SSA's Medical Officers determination that SSA buildings could not provide me with a scent free environment (see SSA medical officer document page 2) and the medical recommendations my doctors made to provide me with a fragrance and chemical free environment (see medical documentation pages 31,36,45,46,48,52 and 98). James Dokko was wrong to deny my reasonable accommodations request for telework, ignoring Kris recommended that I be approved for telework five days a week (see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11) and without ever having determined if SSA was able to provided

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    Benefit Authorizers telework five days a week as an RA or under Article 39 James Dokko also
2    notes that there are still journeyman level Benefit Authorizers who are still not SPIKE trained
3    more than 2 years after the EEOC hearing (see MSPB Hearing Transcript day 1 page 205 lines 7-
4    25 and page 206 lines 1-14) and James Dokko instead based his decision on what he felt
5    "accommodation that I feel was appropriate" James Dokko claims to have followed my doctors
6    recommendations to isolate the air flow from other areas of the building and provide air from
7    outside and then James Dokko takes it back when he testifies "Oh, I'm not aware. All I know is -
8    - is that the air flow -- we did not make any changes to our air intake system, no." see MSPB
9    Hearing Transcript day 1 page 208 lines 13-25 and page 209 lines 1-9. SSA revoked approved
10   reasonable accommodation of Liberal Leave, which SSA gave me instead of approving my
11   reasonable accommodation of telework. Because SSA revoked the reasonable accommodation of
12   liberal leave which was supposed to be just as effective as telework SSA I asked SSA to approve
13   my request for the effective reasonable accommodation of telework, which would have returned
14   me to work full time, SSA at James Dokko's recommendation continued to deny my reasonable
15   accommodation request of telework. SSA management refused to allow me to have union
16   representation when we discussed SSA revoking the approved reasonable accommodation of
17   Liberal Leave approved in lieu of telework and changes in the working environment even though
18   I asked twice to be provided Union Representation proving SSA does not uphold the rights of
19   employees and SSA does not abide by ADAAA or the Rehabilitation Act of 1973 or SSA
20   policies in place to protect employees. SSA management acknowledges that SSA is unable to
21   prevent my exposure to fragrances and chemicals that all SSA could do in the buildings was try
22   and limit my exposure, proving SSA was aware I was being exposed while I was in SSA
23   buildings and therefore proving the provided reasonable accommodations in the buildings are not
24   as effective as the reasonable accommodation of telework would have been, because in my home
25   I can eliminate my exposure to fragrances and chemicals see MSPB Hearing Transcript day 2
26   page 6 lines 21-25 page 7 lines 1-4. I proved I could work from home full time and perform the
27   essential functions of my job from July 26, 2016 through August 15, 2018 I worked 100% via
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   telework and received successful performance appraisals, my first line manager had told
2   Carmelita Rivera and James Dokko that based on my work I should be allowed to telework five
3   days a week per MSPB Hearing Transcript day 1 page 26 lines 16-25 and page 27 lines 1-11.
4   SSA's inactions, delays and refusal to approve my requested reasonable accommodation of
5   telework because SSA believed the approved reasonable accommodation of the air purifier (see
6   MSPB Hearing Transcript day 2 page 44 line 4-7) was effective, forced me to take sick leave
7   instead of allowing me to work full time. SSA used the sick leave SSA forced me to take against
8   me when SSA ultimately fire me unlawfully for taking sick leave, even though I was in
9   reasonable accommodations talks with management  during the period of time SSA proposed to
10  remove me and that the reasonable accommodations James Dokko offered me was a variation of
11  the failed accommodation James Dokko was just moving me around in the same building
12  environment under the mistaken belief it would be more effective (please note I had already been
13  placed on the third floor before being moved to the 4th floor), see MSPB Hearing Transcript day
14  2 page 81 lines 6-20. James Dokko acknowledges he was the SSA manager responsible for my
15  reasonable accommodations requests instead of my first line manager/supervisor, per MSPB
16  Hearing Transcript day 1 page 146 lines 5-19, it is important to not had my first line supervisor
17  been responsible for my reasonable accommodations request he would have approved me to
18  telework full time, extremely important to note my first line informed both my second line
19  Carmelita Rivera and third line James Dokko of his recommendation see MSPB Hearing
20  Transcript day 1 page 26 lines 16-25 and page 27 lines 1-11. SSA forced me to take leave I was
21  never provided an effective reasonable accommodation of telework, SSA instead approved the
22  reasonable accommodations of a room, an air purifier, door guard "air guard" and flexible leave I
23  was required to walk through a building that was not fragrance and chemical free and although
24  there are journeyman level Benefit Authorizers who did not have to answer SSA's 800 number
25  aka spike at all. James Dokko never inquired as to where or not telework was an available
26  Reasonable Accommodation I could have been given instead of terminating me see MSPB
27  Hearing Transcript day 2 page 20 lines 20-25 and page 21 lines 1-3 and MSPB Hearing

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   Transcript day 1 page 205 lines 17-23, James Dokko always recommended that I be denied the
2   reasonable accommodation of telework every time because of the information he had but James
3   Dokko acknowledges never confirming his claims if SSA approved my request for telework
4   would eliminate an essential function of my job or that SSA did not approve other qualified
5   disabled Benefit Authorizers with telework five days a week either as an RA or under Article 39.
6   James Dokko is aware there are Journeyman level Benefit Authorizers who have completed the
7   mandatory nine month training and passed their three day review who do not answer SSA's 800
8   number aka SPIKE – the Benefit Authorizer's were still not trained even though it has been more
9   than two years since the EEOC hearing, see MSPB Hearing Transcript day 1 page 205 lines 7-25
10  and page 206 1-23 and page 217 lines 5-19 and page 218 lines 6-22 and see MSPB Hearing
11  Transcript day 1 page 30 lines 5-25 and page 31 lines 1-2. Had SSA management approved my
12  request to telework five days a week I would not had to take leave and I would never have been
13  fired for taking sick leave for being disabled see MSPB Hearing Transcript day 1 page 45 lines
14  20-25 and page 46 lines 1-2. In January 19, 2017 EEOC Hearing Transcript Volume 2 page 248
15  lines 9-25 and page 249 lines 1-25 and page 250 lines 1-13 Debby Ellis testified that Benefit
16  Authorizers are trained to answer SSA 800 number SPIKE during the nine month training and
17  later acknowledge that there were fully trained Benefit Authorizers who were not trained to
18  answer SSA 800 number SPIKE during the nine month training claiming that the change in
19  training was recent and that no matter what by spring of 2017 the Benefit Authorizers would be
20  trained, which is a lie I was hired in 2008 and during my nine month training I was not trained to
21  answer SSA's 800 number, answering SSA 800 number was not part of the three day test either,
22  in fact training to answer SSA's 800  number is an additional training given to journeymen level
23  Benefit Authorizers about two months long, Kris also testified Debby Ellis's claims were false
24  per MSPB Hearing Transcript day 1 page 30 lines 5-25 and page 31 lines 1-2 and January 19,
25  2017 EEOC Hearing Transcript Volume 2 page 353 lines 3-9. I begged SSA management to
26  abide by reasonable accommodations policy and provide me with an effective reasonable
27  accommodation of telework to no avail. SSA management's refusal to approve my reasonable
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

accommodation request for telework and chose instead to approve the reasonable accommodation of flexible leave "Liberal Leave" which forced me to take leave as an reasonable accommodation instead of an accommodation that would allow me to keep working full time, management later revoked liberal leave but continued to approve flexible leave through the EEO hearing in January 2017 and then refused to approve leave unless  I went to the building and triggered my disability, see MSPB Hearing Transcript day 1 page 205 lines 24-25 and page 206 lines 1-14 and page 227 lines 2-25 and 228 lines 1-25 and page 229 line 1. After the EEO hearing was held SSA management started to post AWOL on my record I believe in retaliation to blacken my record unjustly to wrongfully terminate me under the pretense I was not fired for being a known disabled employee who needed an effective reasonable accommodation to return to work full time, SSA manager Carmelita River acknowledged she would have still proposed my removal even if she had posted LWOP instead of AWOL because I did not show up for work in the building but Carmelita Rivera acknowledged location of work can be an employee's home, per MSPB Hearing Transcript day 1 page 88 lines 2-5 see page 108 line 23-25 and page 109 line 1. SSA management has control over reasonable accommodations and leave approval SSA had no lawful reason for denying my reasonable accommodations request of telework especially since my first line supervisor Kris Chamrernlaksa that Kris recommended that I be approved for telework five days a week (see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11. SSA management manipulated events so that I would max out my leave so that SSA could post AWOL under false pretenses as a way unjustly blacken my record so that when I was fired it would appear as though I was not fired for being a qualified disabled employee who was denied an effective reasonable accommodation to cover up the disability discrimination I endured at SSA's hands so SSA could fire me for fake AWOL charges SSA management unjustly posted to my leave record instead of LWOP. Proof the AWOL SSA put on my record were not real/fake AWOL is that I worked telework up until my last day was approved to work credit and over time while SSA posted AWOL on my record, it is also important to note that credit and over time is only given to employees in good standing and an employee who is really AWOL is not in good

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

standing and not allowed to telework, see MSPB Hearing Transcript day 1 page 116 lines 14-25 and page 117 lines 4-25 and page 118 lines 1-4 and page 46 lines 11-25 and page 47 line 1 and page 48 lines 12-25 and page 49 lines 7-14. SSA knows that I am a qualified disabled employee, my performance was excellent and that because there was no undue hardship defense to explain why SSA refused to approve my reasonable accommodation request for telework, see MSPB Hearing Transcript day 2 page 153 lines 16-22 and page 89 lines 11-22 and page 95 lines 3-19. I believed SSA management looked into other ways SSA could fabricate a reason to wrongfully terminate me, AWOL was the only available option SSA management had, in which SSA could abuse their authority and unjustly blacken my record my work record with fake AWOL, see MSPB Hearing Transcript day 1 page 116 lines 14-25 and page 117 lines 4-25 and page 118 lines 1-4. SSA provided more than 20 other qualified disabled Benefit Authorizers telework as a reasonable accommodation since at least 2016 and more than 100 Benefit Authorizers under Article 39 Work at Home by Exemption since at least 2015. I believe that SSA management determined the only way they could fire me was under false pretenses of being AWOL because of the stigma that comes with having AWOL on your record, since SSA management can manipulate what reasonable accommodations are and are not approved and what leave will and will not approve SSA management had me at a disadvantage from the beginning. The only protection I had was I am a qualified disabled employee who was approved the reasonable accommodation of Liberal Leave, when active prevented SSA from unjustly blackening my record with AWOL and because SSA acknowledges I was successfully performing my job, see MSPB Hearing Transcript day 1 page 91 lines 4-6 and page 183 lines 2-6 and page 197 lines 4-6 and MSPB Hearing Transcript day 2 page 44 lines 8-10 and page 50 lines 12-18.  SSA/AFGE National Agreement Article 21 Performance which discusses how SSA managers are to grade their staff and no were in Article 21 does it say that an employee who receives a "Level 3 – Successful Contribution" rating would be found not to be  performing the essential functions of their job and January 19, 2017 EEOC Hearing Transcript Volume 2 page 109 lines 3-16. SSA management was aware I was working 100% via telework and was not able to work in SSA's

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  physical building due to my disabilities because the building could not provide me with a
2  fragrance and chemical free environment even with the air purifier in the room my disability was
3  still triggered, SSA Medical Officer had determined SSA could not provide me with a scent free
4  environment in the SSA building, see MSPB Hearing Transcript day 1 Kris Chamrenlaska page
5  25 lines 18-25 and page 26  line 1 and lines 23-25 and page 27 lines 1-8 and MSPB Hearing
6  Transcript day 1 James Dokko page 206 lines 13-23, page 220 lines 18-22. page 197 lines 4-25
7  and MSPB Hearing Transcript day 2 page 6 lines 21-25 page 7 lines 1-4 and page 130 lines 22-
8  25 and exhibit SSA medical Officer decision page 2. I was hired as a Benefit Authorizers  in
9  August 2008 and I completed my nine month training and my three day review and became a
10 journeyman level BA in 2010 and throughout that I was not trained to answer SSA 800 number
11 aka SPIKE a few years past before I was trained to proving answering SSA 800 number aka
12 SPIKE also SPIKE is about a two month training proving SPIKE is not an essential function of
13 the Benefit Authorizers per MSPB Hearing Transcript day 1 page 4 line 16 and page 5 lines 7-11
14 and page 30 lines 9-25 and page 31 lines 1-2 and January 19, 2017 EEOC Hearing Transcript
15 Volume 2 page 353 lines 3-6. Debby Ellis defines what a journeyman level employee is "By the
16 time you are a journeyman level, you're expected to be able to do all the major duties and sustain
17 those job duties" see January 19, 2017 EEOC Hearing Transcript Volume 2 page 65 lines 12-14.
18 Evidence answering SSA 800 number aka SPIKE is not an essential job function is that
19 answering the 800 number is not part of the Benefit Authorizer nine month training and is not
20 part of the Benefit Authorizers three day test; Benefit Authorizers have to pass to move from
21 trainee status to journeyman level and SPIKE training is only given to a Benefit Authorizer
22 becomes a journeyman level also SPIKE is about two months of training. see MSPB Hearing
23 Transcript day 1 Kris Chamrenlaska page 5 line 9 and page 29 lines 21-25 and page 30 lines 1-25
24 and page 31 lines 1-2 and see January 19, 2017 EEOC Hearing Transcript Volume 2 page 353
25 lines 3-6. SSA management has complete control over whether reasonable accommodations are
26 approved or denied and whether leave is approved or denied and whether or not SSA revokes
27 approved reasonable accommodations without cause or explanation, throughout this entire
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

process I have been at SSA managements mercy and although SSA knows I am a qualified disabled employee SSA refused to allow the reasonable accommodation of telework that is available to Benefit Authorizers and would provide me with a fragrance and chemical free environment. I received successful performance appraisals while I was working 100% via telework see MSPB Hearing Transcript day 2 James Dokko page 50 lines 3-16. SSA/AFGE National Agreement Article 21 Performance which discusses how SSA managers are to grade their staff and no were in Article 21 does it say that an employee who receives a "Level 3 – Successful Contribution" rating would be found not to be performing the essential functions of their job and January 19, 2017 EEOC Hearing Transcript Volume 2 page 109 lines 3-16. SSA management acknowledge that I was not removed from SSA because of my performance but for being out sick which SSA management considered misconduct see MSPB Hearing Transcript day 2 James Dokko page 89 lines 11-22 and MSPB Hearing Transcript day 1 Kris Chamrenlaska page 61 lines 5-25 and page 62 lines 1–2 and Carmelita Rivera acknowledges knowing I need a fragrance and chemical free environment and that the building is not a fragrance and chemical free environment and neither are other areas proving SSA's claims I could have taken a taxi, or other public transportation to and from work was a bad faith effort to make it appear it was my fault I was not working full time and not SSA's failure to approve an available effective reasonable accommodation also SSA was aware that even with the air purifier I was still unable to work in the room because of the fragrances and chemicals, see MSPB Hearing Transcript day 1 page 105 lines 5-12 page 42 lines 1-6 and MSPB Hearing Transcript day 2 page 130 lines 22-25. SSA had been provided medical documentation from my doctors that stated I needed a fragrance and chemical free environment because of my disability per MSPB Hearing Transcript day 1 Kris Chamrenlaska page 62 lines 17-25 and page 63 lines 1-9. SSA acknowledges the air quality test ordered by SSA did not provide relevant information as to where the building was healthy or safe for someone with sensitivity to environmental irritants because the test only tested for carbon dioxide, temperature and humidity and only tested for human comfort and not health, which proves SSA misrepresented the validity of the findings of the air quality test they

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **31** of **69**

1    ordered in relation to how healthy and safe the building is to work in especially for someone who
2    has sensitivity to environmental irritants see MSPB Hearing Transcript day 2 page 54 lines 3-8
3    and page 55 lines 7-10 and page 56 lines 15-20 and page 137 lines 5-11. SSA was aware that
4    simply entering and exiting the building would put me into contact with fragrances and
5    chemicals and that my medical documentation informed management that I needed a fragrance
6    and chemical free environment due to my sensitivity to environmental irritants per MSPB
7    Hearing Transcript day 1 Kris Chamrenlaska page 25 lines 18-25 and page 26 line 1.

8          On October 31, 2016 EEOC AJ decided that there were two issues she felt needed live
9    testimony (1) my credibility because SSA has two defenses either I do not have a disabling
10   condition or if I am disabled they don't believe there is evidence that says the accommodations
11   provided are not effective. EEOC AJ puts it "In other words, according to the Agency, Ms. Tom
12   is either imagining her symptoms or is fabricating them." (2) Undue Hardship EEOC AJ "If
13   Complainant is credible and her symptoms are genuine, then the current accommodations are not
14   working, and the Agency must consider full-time teleworking. To justify not allowing
15   Complainant to telework full-time, the Agency must demonstrate undue hardship. In its MSJ,
16   SSA did not address the undue hardship of full-time telework because the Agency contends the
17   other accommodations provide are effective." see exhibit Communications with EEOC AJ and
18   Agency Counsel, me, my Counsel for EEO case – exhibit 15. SSA management acknowledges
19   there is no undue hardship for SSA to have approved me for telework full time as a reasonable
20   accommodation or for SSA to provide me with a clean laptop like they did the first two times I
21   was given laptops the first in 2014 and the second in 2015 were clean and I had no problem
22   working on them but that SSA did not take the same steps with the third laptop they did with the
23   first two, to make sure that third laptop I was given was handled by the one SYSCO – technical
24   support staffer who is known to be fragrance and chemical free to ensure that the third laptop
25   was not contaminated during the first phase of imaging the laptop and not contaminated while it
26   was "rebox" and left sitting in an unsecure area in the building for weeks to months before it was
27   selected and imaged for the second time and given to me, per MSPB Hearing Transcript day 2
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    page 153 lines 16-22 and see MSPB Hearing Transcript day 2 page 74 lines 1-2 and 18-23 and
2    page 76 lines 20-25 and see January 19, 2017 EEOC Hearing Transcript Volume 2 page 321
3    lines 24-25 and page 322 lines 1-25 and page 323 lines 1-20 and MSPB Hearing Transcript day 2
4    page 68 lines 3-19 and page 69 lines 14-22 and page 70 lines 1-21 and page 71 lines 11-20 and
5    page 72 lines 14-21 and page 73 lines 6-9 and lines 15-25

6           On April 7, 2017 EEOC AJ rendered an flawed a decision that found I had not proven I
7    was a qualified disabled individual with a disability and because of that EEOC AJ did not find a
8    violation of the Rehabilitation Act on either my harassment of failure to accommodation claims.
9    EEOC AJ was also wrong when she claimed I did not respond to SSA's Statement of Material
10   Undisputed Facts I did appeal it was just ignored like all the other evidence. EEOC AJ errored in
11   not giving proper weight to the fact I received successful performance appraisals and that I was
12   working 100% via telework since July 26, 2017 under the pilot telework program and not as a
13   reasonable accommodation, SSA acknowledges that I was teleworking because of the pilot
14   telework program and not as a reasonable accommodation per MSPB Hearing Transcript day 2
15   page 162 lines 3-4. EEOC AJ errored in giving less credit to my treating physicians Dr. Young
16   who I was referred to after being seen by the two emergency room doctors, the two emergency
17   room doctors are the only doctors whom I saw that claim my condition have psychological
18   component and suggested a multidisciplinary intervention the second doctor who claimed I had
19   anxiety do not have psychological degrees and neither of them called for a consult for a doctor
20   who is trained in diagnosing mental health conditions before making their snap judgements and
21   neither of the emergency room doctors spent at most 2 minutes with me, both emergency room
22   doctors referred me back to my treating physician Dr. Young who specializes in allergies and
23   neither emergency room doctor ever referred me to mental health. It is also important to note that
24   the first doctor did note a mild reaction what he fails to note is how long I was in contact with the
25   fragrances and chemicals it was no more than a few minutes and I saw him hours after the initial
26   contact so by the time I saw him I was partially recovered, the second emergency room doctor I
27   saw over five hours since I was exposed to fragrances and chemicals and management was still
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   demanding I provide medical documentation so that my leave would be approved. I went to my
2   treating physician Dr. Young who specializes in allergies after both emergency room doctors
3   named in EEOC AJ decision referred me to him to confirm his original diagnosis and both times
4   Dr. Young reaffirmed his diagnosis and did not refer me to mental health. EEOC AJ erred in
5   finding more credibility with the two emergency room doctors who don't specialize in allergies
6   or psychology diagnosis that my condition has a psychological component and not finding my
7   treating physical Dr. Young who specialize in allergies and did not find my condition was
8   psychological, had he, Dr. Young would have referred me to mental health. which he never did.
9   Dr. Young re affirmed his diagnosis of my disability in doctors letter after both visits in which
10  he affirmed the treatment of my disability sensitivity to environmental irritants is avoidance see
11  exhibit Medical Documents pages 31-32,36,42,43,45,46,48,52 and 68-87. EEOC AJ also errored
12  in claiming that I did not get sick during the hearing my attorney noted it in her Appellant's Brief
13  in Support of Appeal. I would like it noted that when I got to the hearing building I went straight
14  through to the hearing room and did not leave the hearing room with the exception of a handful
15  of times during the two day hearing to go to the restroom and when we left to go home, also that
16  I was covered from head to foot and wore a mask, scarf that covered everything but my hands
17  and eyes. EEOC AJ did not note I spent the breaks in the hearing room the one room in building
18  that had not been cleaned with chemicals per the EEOC AJ orders and the hallway connecting to
19  the hearing room was not as well traveled as clamed and defiantly not like the hallways in the
20  SSA building. EEOC AJ never asked how I was doing had she I would have told her I was sick
21  and I was having a hard time following the hearing and by the end of each day even though I did
22  not leave the hearing room with the exception of when I went to the restroom, I was sick from
23  exposure to the fragrances in the restroom and that I was starving and was extremely weak from
24  not being able to eat or drink all day. EEOC AJ errored in claiming it was not possible for SSA
25  to provide me with a clean laptop which is not true I received three laptops the first two laptops
26  were clean and not contaminated until they were contaminated while left in the building,
27  however the third laptop was contaminated since the first day, it is important to note that SSA
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  acknowledge that the first two laptops were initially not an issue, SSA also acknowledged it
2  would not be an undue hardship on SSA to buy a new laptop and have it imaged by the one
3  employee who is known to be fragrance and chemical free, see MSPB Hearing Transcript day 1
4  James Dokko page 163 lines 11-18 and MSPB Hearing Transcript day 2 James Dokko page 68
5  lines 3-19 and page 69 line 18-22 and page 70 lines 1-21 and page 73 lines 3-25 page 74 lines 1-
6  3 and lines 18-22, see hearing testimony see January 19, 2017 EEOC Hearing Transcript Volume
7  2 James Dokko page 320 lines 2-16 and page 321 lines 1-10 and lines 19-25 and page 322 lines
8  1-25 and page 323 lines 1-25. EEOC AJ made a medical determination she determined that if I
9  do have an anxiety disorder if I received treatment for anxiety I might get better, which is
10  contradictory to what my treating physician Dr. Young who has a degree to treat people with my
11  disability who has stated that the treatment for my condition "Primary treatment for this
12  condition is avoidance rather than medications." Written July 7, 2015 after the two emergency
13  room doctor's visits, see page 46 of exhibit Medical Documents. EEOC AJ errored in giving
14  more weight to Debby Ellis's statements answering SSA 800 number aka SPIKE is an essential
15  job function based on Debby Ellis's testimony that SPIKE training was part of the nine month
16  training Benefit Authorizers even though right after Debby Ellis's testimony she acknowledged
17  there were fully trained/journeyman level Benefit Authorizers who completed the nine month
18  training were not SPIKE trained see January 19, 2017 EEOC Hearing Transcript Volume 2 page
19  248 lines 9-25 and page 249 lines 1-25 and page 250 lines1-13 and page 251 lines 12-14 and
20  MSPB Hearing Transcript day 1 page 30 lines 5-25 and page 31 lines 1-2. EEOC AJ also heard
21  testimony that SPIKE training is about two months so it would be impossible for SPIKE training
22  to have been included in the nine month training, see January 19, 2017 EEOC Hearing Transcript
23  Volume 2 page 353 lines 3-6 and MSPB Hearing Transcript day 1 page 30 lines 5-25 and page
24  31 lines 1-2, a pamphlet and a video that was not presented was sufficient evidence to prove
25  answering SSA 800 number aka SPIKE is an essential job function. EEOC AJ ignored the fact
26  Debby Ellis acknowledged that she lied when she claimed that answering the answering SSA
27  800 number aka SPIKE was part of the Benefit Authorizers nine month training she was caught
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **35 of 69**

1 | in the lie at the hearing see January 19, 2017 EEOC Hearing Transcript Volume 2 page 248 lines
2 | 9-25 and page 249 lines 1-25 and page 250 lines 1-13. EEOC AJ overlooked Debby Ellis lie and
3 | still found Debby Ellis's testimony was worth more weight than my testimony that Benefit
4 | Authorizers don't learn to answer SSA's 800 number aka SPIKE during the nine month Benefit
5 | Authorizers training and that only after a Benefit Authorizer becomes a journeyman level
6 | employee does SSA give a Benefit Authorizer SPIKE training see January 18, 2017 EEOC
7 | Hearing Transcript Volume 1 page 28 lines 1-22 and Kris Chamrernlaksa also acknowledges that
8 | Benefit Authorizers do not receive training to answer SSA's 800 number aka SPIKE until after
9 | they become journeyman level and that there are still Benefit Authorizers who were journeyman
10 | level that were still not SPIKE trained even though Debby testified in January 19, 2017 on page
11 | 250 lines 9-13 that by spring 2017 all the journeyman level Benefit Authorizers would be
12 | trained,  see MSPB Hearing Transcript day 1  page 5 line 9 and page 30 lines 5-25 and page 31
13 | lines 1-2. I provided evidence showing that answering SSA 800 number aka SPIKE is not part of
14 | the nine month training and only after a Benefit Authorizer reaches journeyman level status does
15 | SSA train Benefit Authorizers to answering SSA 800 number aka SPIKE. EEOC AJ errored in
16 | claiming that James Dokko went beyond his legal requirement and excused me from SPIKE and
17 | that because I was trained to SPIKE I could not be excused, it is important to note that SSA
18 | Counsel agreed to excuse me from SPIKE in our mediated agreement also because Debby Ellis
19 | acknowledges that module managers decide who SPIKE's or does not SPIKE, further evidence
20 | that SPIKE is not an essential function of the job because SSA management can decide who does
21 | and does not SPIKE, see January 19, 2017 EEOC Hearing Transcript Volume 2 page 300 lines 8-
22 | 25 and page 301 lines 1-3. It is important to noted that James Dokko acknowledges that he never
23 | explored where or not it was possible for a Benefit Authorizer to telework full time as a
24 | reasonable accommodation or if other Benefit Authorizer were allowed to telework fill time he
25 | did not think it was relevant to find out before making his recommendation to deny my requests
26 | for telework, see MSPB Hearing Transcript day 2 page 20 lines 20-25 and page 21 lines 1-3 and
27 | page 204 lines 17-25 and page 205 lines 1-23. Debby Ellis later acknowledged that Benefit
28 | TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1     Authorizers could telework full time and there was no way for SSA to isolated air I received air
2     from outside the building's recirculated air system, it's important to note that Debby Ellis
3     acknowledged that even with the air purifier the room I was still having issues with fragrances
4     and chemicals proving even with the air purifier the room was not fragrance and chemical free,
5     see page MSPB Hearing Transcript day 2 page 130 lines 22-25. The air quality tests were not
6     testing to see if the air was safe for my disability or any employees disability, Debby Ellis
7     testified "It's not specific to any particular person within either an autoimmune system or any
8     type of sensitivity. I don't think it's geared to that. I would -- I would agree with you." see MSPB
9     Hearing Transcript day 2 page 130 lines 2-25 and page 131 lines 1-25 and page 132 lines 1-25
10    and page 133 lines 1-25 (uses in conjunction with Medical Document exhibit page 48) and page
11    134 lines 1-25 and page 135 lines 1-25 and page 136 lines 1-25 and page 137 lines 1-11 and page
12    121 lines 10-14 and page 122 lines 2-15 and page 124 lines 2-5; 15-25 and page 125 lines 1-17
13    and page lines 1-13 and page 127 lines 1-13 and page 128 lines 13-25 and page 129 lines 1-25.
14    My disabilities had gotten worst because SSA continued to refused to provide me with the
15    reasonable accommodation of telework because SSA decided a mask (that only covers my mouth
16    and nose), air purifier and leave approval was an effective reasonable accommodation, SSA
17    acknowledges "I see that Dr. Young has indicated, you know, irritant effects to nose, eyes."
18    SSA did not take any action to protect my eyes, Debby Ellis acknowledges that since 2014 the
19    disabilities I needed to be effectively accommodated increased to include vertigo, migraines with
20    aura and sensitivity to environmental irritants, see MSPB Hearing Transcript day 2  page 141
21    lines 5-6 and page 142 lines 1-19. Debby Ellis acknowledges that SSA is responsible for provide
22    a reasonable accommodation to all known physical and mental limitations of a medical condition
23    but she states "So we're not obligated to do anything and everything. We have to do what's
24    reasonable and effective to remove the barriers so that an employee can do their job." The
25    evidence proves the reasonable accommodations SSA provided me did not enabled me to return
26    to work full time, SSA provided me with reasonable accommodations that allowed me to take
27    leave which is not an effective accommodation, see MSPB Hearing Transcript day 1 page 205
28    TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  lines 24-25 and page 206 lines 1-12 and page 227 lines 2-25 and 228 lines 1-25 and page 229
2  line 1.  SSA acknowledges that I received successful performance appraisals it is important to
3  note that since August 2016 through my termination August 2018 I worked 100% via telework, I
4  asked Debby Ellis if I was allowed to try telework as a reasonable accommodation it would have
5  enabled SSA to determine if it was an effective reasonable accommodation and she stated that
6  SSA would not test the viability of a reasonable accommodation if the accommodation was off
7  site "We don't -- we don't normally, you know, kind of test a reason -- we test if it's on site if it's
8  reasonable and effective, but we don't say, let's go test this and then test that and then test this."
9  MSPB Hearing Transcript day 2 page 142 lines 20-25 and page 143 lines 1-18. Debby Ellis
10  acknowledges that SSA occupied buildings would not be able to provide me with a fragrance and
11  chemical free environment and she dodges answering my question as to the fact I would be more
12  able to avoid chemicals and fragrances in my own home than in any SSA occupied place see
13  MSPB Hearing Transcript day 2 page 144 lines 2-16. Debby Ellis testifies that SSA would not
14  have suffered a hardship if they approved me the reasonable accommodation of telework "I don't
15  know what true hardship the agency would have suffered." MSPB Hearing Transcript day 2 page
16  153 lines 16-22. Debby Ellis acknowledges that SSA has approved Benefit Authorizers with full
17  time telework five days a week and that the Benefit Authorizers who were approved for full time
18  telework were not required to SPIKE and were allowed to telework on SPIKE days see MSPB
19  Hearing Transcript day 2 page 153 lines 23-25 and page 154 lines 1-25 and page 155 lines 1-25
20  and page 156 line 1. Debby Ellis lied when she claimed that Benefit Authorizers approved for
21  Article 39 Work At Home by Exemption were not required to perform the essential functions of
22  their job, Article 39 Work At Home by Exemption does not excuse employees from performing
23  the essential functions of their job. Debby Ellis is incorrect in claiming that approval for
24  Reasonable Accommodations of telework differs from Article 39, because Article 39 approval
25  excuses an employee from performing the essential functions of their job; MSPB Hearing
26  Transcript day 2 page 156 lines 2-25 and page 157 lines 1-3. James Dokko testified that no one
27  at SSA has the authority to excuse an employee from performing the essential functions of their
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  job, proving approval for Article 39 does not excuse an employee from performing the essential
2  functions of their job, see January 19, 2017 EEOC Hearing Transcript Volume 2 page 356 lines
3  8-14. Debby Ellis acknowledges that module managers decide who does and does not SPIKE,
4  further proof that SPIKE is not an essential function of the job if managers can decide who does
5  and does not SPIKE it cannot be deemed essential if the work can be transferred to other staff,
6  see January 19, 2017 EEOC Hearing Transcript Volume 2 MSPB Hearing Transcript day 2 page
7  153 lines 18-25 and page 300 lines 8-25 and page 301 lines 1-3. Debby Ellis states "…But just to
8  clarify, that doesn't mean that a benefit authorizer or a customer service rep has to be on the
9  phone the whole eight hours of a level 1 day. The manager decides at the module level, at the
10  individual module level, the workload balancing." January 19, 2017 EEOC Hearing Transcript
11  Volume 2 page 300 lines 12-17 And "… it's up to our individual managers." January 19, 2017
12  EEOC Hearing Transcript Volume 2 page 301 line 1, shows that module managers have the
13  authority to select who does and does not SPIKE and further evidence James Dokko was well
14  within his authority to excuse me from SPIKE. Debby Ellis acknowledges that SSA could
15  approve a Benefit Authorizer the reasonable accommodation of full-time telework and that there
16  is enough Benefit Authorizer work that would enable a Benefit Authorizer to work full time she
17  acknowledges that Benefit Authorizers were excused from SPIKE under Article 39 she also
18  acknowledges that SSA uses the same reasonable accommodations policy throughout SSA, see
19  MSPB Hearing Transcript day 2 page 157 lines 4-7 and lines 16-25 and page 158 lines 1-17.
20  Debby Ellis acknowledges that SSA has the same reasonable accommodation (RA) policy "The
21  RA policy is -- is national. It came out from central office, so we don't have regional-specific
22  policies. So the answer is, yes, we all share the same, you know, written policy and guidance.",
23  she also acknowledges that documents provided by SSA's Counsel show that SSA has approved
24  Benefit Authorizers the Reasonable Accommodation of telework full time and that the Benefit
25  Authorizers were able to perform the essential functions of their job while working full time
26  telework, see exhibits provided in my initial complaint dated May 17, 2019 labeled "Agency's
27  Response to Appellant's Request for Production #6 as amended in the Board's April 25, 2019
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Order" and dated May 3, 2019"Agency's Response to Appellant's Request for Production #6 as amended in the Board's April 25, 2019 Order" and MSPB Hearing Transcript Day 2 page 158 lines 24-25 and page 159 lines 1-25. Debby Ellis testimony shows that my SSA managers who decided my reasonable accommodations request for telework based their denials on their preference to approve RA's that kept a qualified disabled employee in the building instead of allowing them to telework as an RA, my SSA managers believe that approving the RA of telework as a last resort, my SSA management preferred keeping the qualified disabled employee in the building even if the keeping the qualified disabled employee in the building caused harm to the employee because Debby Ellis believed it was better "...my personal belief is morale is -- is higher when you got people collocated together..."MSPB Hearing Transcript day 2 page 161 lines 15-25 and page 162 lines 1-25 and page 163 lines 1-16. James Dokko acknowledges that SSA management does not have the authority to excuse an employee from an essential function of their job per MSPB Hearing Transcript day 2 page 200 lines 15-17 and Debby Ellis acknowledges that Benefit Authorizers other than me were excused from SPIKE see MSPB Hearing Transcript day 2 page 155 lines 10-25 and page 156 lines 1-16, Article 39 does not excuse an employee from performing their essential functions. Debby Ellis acknowledges SSA approved Benefit Authorizers with the reasonable accommodation of full time telework see MSPB Hearing Transcript day 2 page 159 lines 18-25. James Dokko testifies that he only has the authority to recommend a denial or approval of telework full time and that he recommended to the NRAC to deny my RA request for telework "I stated that you were not a qualified individual with a disability based on your requested accommodation." James Dokko acknowledges that SSA provided me with reasonable accommodations proving I was a known qualified disabled employee, see MSPB Hearing Transcript day 1 page 191 lines 1-25 and page 192 lines 1-5. It is important to note that SSA's National Reasonable Accommodations Coordinator (NRAC) based their decision solely on SSA's management's recommendation and did not do their job and confirm managements claims answering the 800 number was an essential job function and that Benefit Authorizers could not be approved for the Reasonable Accommodation of Telework

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

"Ms. Stenzel stated she does not recall if 800 calls were determined to be an essential function of the job or to the extent to which she considered the issue." See exhibit "Statement From NRAC decision maker..." James Dokko definition of qualified disabled employee "So a qualified individual basically, you know, has a medical condition that limits one or more life activities, and the employee is still able to do the essential functions of their job." James Dokko acknowledges that he is aware I have medical condition but he says that "For your request for telework full time, I do not find that you are a qualified individual with a disability." Which is contradictory to his early statement that SSA provided me with reasonable accommodations, SSA cannot find I am a qualified disabled employee for some reasonable accommodations request and not for others, especially since the reasonable accommodation I was asking for SSA was already providing to other qualified disabled Benefit Authorizers proving SSA had already determined Benefit Authorizers could perform the essential functions of the job at home, see MSPB Hearing Transcript day 1 page 193 lines 6-17 and see exhibits in my initial complaint dated May3, 2019 and May 17, 2019 provided to me by SSA's Counsel. It is important to note that SSA was aware that I was working 100% from home via telework from July 26, 2016 through my termination on August 15, 2018 without SPIKING a single day during that time and I continued to receive successful performance appraisals. SSA knew  I was teleworking under the pilot telework program about once a week and not teleworking as a reasonable accommodation see MSPB Hearing Transcript day 1 page 107 lines 16-20; I did not have a disciplinary record and I was in good standing, MSPB Hearing Transcript day 1 page 197 lines 4-9 and proof I was in good standing see MSPB Hearing Transcript day 1 page 46 lines 11-25 and page 47 line  1 and page 48 lines 12-24 and page 49 lines 7-14 and page 116 lines 14-25 page 117 lines 1-25 and page 118 lines 1-10. The fact I was working 100% via telework under the pilot program and not as a reasonable accommodation about once a week from July 26, 2016 through August 15, 2018 and received successful performance appraisals without SPIKING a single day proves I am a qualified disabled employee, James Dokko's acknowledges I was approved for reasonable accommodations, but he  deemed I am not a qualified disabled

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  employee if I ask for telework, despite the fact first line supervisor Kris Chamrernlaksa that Kris
2  recommended that I be approved for telework five days a week, see MSPB Hearing Transcript
3  day 1 page 27 lines 5-6 and lines 9-11. James Dokko believes that an employee is deemed to be a
4  qualified disabled employee based on the type of reasonable accommodation the employee is
5  requesting which is against the Rehabilitation Act of 1973 and ADAAA. EEOC AJ errored in her
6  decision to ignore the fact I was receiving successful performance appraisals without being
7  provided an effective reasonable accommodation, both my attorney and I raised the fact that I am
8  a qualified disabled employee by virtue of my successful performance of my job per case law:
9  *Lavern B. v. Dep't of Housing and Urban Development,* EEOC No. 0720130029 (EEOC OFO
10 02/12/15) and *Kohner v. Dep't of Transportation* EEOC Appeal No. 0120110334, 1 (September
11 14, 2012) *Latarsha A. v. Federal Energy Regulatory Commission*, EEOC Appeal Nos.
12 0120123215, 0120131079 (Mar. 15, 2016) had SSA allowed me to telework five (5) days a week
13 like the 20+ other qualified disabled Benefit Authorizers as a reasonable accommodation, 100+
14 other disabled Benefit Authorizers under Article 39 and one (1) Benefit Authorizer who worked
15 virtually, there is no evidence I could not have continued to work full time in fact my first line
16 supervisor Kris Chamrernlaksa that Kris recommended that I be approved for telework five days
17 a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11 and exhibits
18 provided in my initial complaint dated May 17, 2019 labeled "Agency's Response to Appellant's
19 Request for Production #6 as amended in the Board's April 25, 2019 Order" and dated May 3,
20 2019"Agency's Response to Appellant's Request for Production #6 as amended in the Board's
21 April 25, 2019 Order" My performance appraisals showed that from 2014 through my
22 termination in August 15, 2018 I had been meeting expectations and the evidence shows that
23 SSA could have approved telework as a reasonable accommodation but refused to unlawfully
24 based on my SSA management's preference to keep me in the work place see MSPB Hearing
25 Transcript day 2 page 162 lines 5-22. Proof of SSA's bad faith effort to effectively accommodate
26 me, James Dokko the SSA manager responsible for recommending approval or denial of my
27 reasonable accommodation of telework NEVER explored if it was possible for a Benefit
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   Authorizer to be approved to telework as a reasonable accommodation and James Dokko ignored
2   my first line supervisor Kris Chamrernlaksa that Kris recommended that I be approved for
3   telework five days a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11,
4   MSPB Hearing Transcript day 2 page 20 lines 20-25 MSPB AJ asks "As someone who is a
5   benefit authorizer in your office, can you -- is there any situation in which you can permanently
6   approve as a reasonable accommodation -- assuming the medical documentation supports it --
7   someone permanently teleworking five days a week as a reasonable accommodation?" James
8   Dokko testified "I've never explored that. Would it be -- could that be a possibility, possibly?
9   Personally, I do not believe so. But at this time --"MSPB Hearing Transcript day 2 page 21 lines
10  1-3. It is important to note I was in reasonable accommodations talks with James Dokko since
11  2015 when he became Operations Manager over my module and in the approximately five (5)
12  years he handled my reasonable accommodations request for telework full time and he never
13  determined if telework was an accommodation available for Benefit Authorizers, however James
14  Dokko continued to recommend SSA deny my reasonable accommodations requests even though
15  my first line supervisor Kris Chamrernlaksa that Kris recommended that I be approved for
16  telework five days a week (MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11)
17  because James Dokko believed if I was approved for telework would remove an essential
18  function of my job, I was denied an effective available reasonable accommodation of telework
19  based on James Dokko's false assumption SSA did not approve Benefit Authorizers the RA of
20  telework an assumption he never confirmed per MSPB Hearing Transcript day 2 page 21 lines 1-
21  3. It appears to me that I was also denied the reasonable accommodation because of Debby
22  Ellis's preference to keep employees in the building as appose to being isolated, see MSPB
23  Hearing Transcript day 2 page162 lines 5-22
24  EEOC AJ did not give proper wait to James Ekeroma an Assistant Module Manager testimony
25  he witnessed my disability being triggered and he personally walked me outside so that I could
26  try and recover from the exposure and he also notes that I was provided reasonable
27  accommodations and that moving around the building SSA's way of reasonably accommodating
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   me, per January 19, 2017 EEOC Hearing Transcript Volume 2 page 200 lines 7-25 and page 201
2   lines 1-25 and page 202 lines 1-25 and page 203 lines 1-10. James Ekeroma acknowledges that
3   there were staff that sprayed of perfumes January 19, 2017 EEOC Hearing Transcript Volume 2
4   page 206 lines 9-16. I was subject to adverse employment actions including but not limited to
5   loss in pay, forced leave and decline to my health, loss of quality of life, loss of future income
6   and my job. I was denied equal rights and was treated adversely to other qualified disabled
7   employees, SSA accommodated another qualified disabled Benefit Authorizer in my module
8   who had an adverse reaction to oatmeal odor and she was effectively accommodated and the
9   odor was eliminated from their working area, and SSA accommodated a module 1 employee by
10  removing me and the fan I used away from her working area see exhibit 3 under
11  Communications with EEOC AJ and Counsel, me, my counsel for EEO case.

12  EEOC AJ rendered a flawed decision because she based her decision solely based on
13  SSA management's testimony, despite the fact on more than one occasion SSA management
14  acknowledged they provided false testimony. EEOC AJ admitted in a telephone conference all
15  with SSA Counsel, my attorney on my other EEOC cases and me that she solely based her
16  decision on the facts SSA management claimed were true at hearing and not on the evidence I
17  provided which proved that I was performing the essential functions of the Benefit Authorizer
18  job while working 100% via telework under the pilot telework program and not as a reasonable
19  accommodation since July 26, 2016 through the hearing January 2019 and because I continued to
20  receive successful performance appraisals without a reasonable accommodations proved I am a
21  qualified disabled employee. EEOC AJ errored because she did not give proper weight to the fact
22  I received successful performance appraisals 100% from home without a reasonable
23  accommodation proved I am a qualified disabled and that SPIKE is not an essential functions of
24  the Benefit Authorizer job. EEOC AJ ignored the fact that SSA management testified fully
25  trained Benefit Authorizers who were journeymen level Benefit Authorizers who completed the
26  nine month training did not answer SSA's 800 number aka SPIKE at all, see January 19, 2017
27  EEOC Hearing Transcript Volume 2 page 249 lines 7-25 and page 250 lines 1-13. EEOC AJ also
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   ignored the fact SSA management testified that SPIKE training is about two months so it is
2   impossible for a Benefit Authorizer to have completed their training if they missed two months
3   of training, see January 19, 2017 EEOC Hearing Transcript Volume 2 page 353 lines 3-7. EEOC
4   AJ also ignored the fact Debby Ellis acknowledged that module managers decided who was
5   selected for SPIKE proving it is not an essential job function because managers at SSA decided
6   who did or did not do the work per January 19, 2017 EEOC Hearing Transcript Volume 2 page
7   300 lines 8-25 and page 301 lines 1-3. Debby Ellis also acknowledged that she lied when she
8   claimed Benefit Authorizers were trained to answer SSA 800 number during the nine month
9   training and she claimed that no matter what by Spring 2017 the Benefit Authorizers who were
10  not trained would be another lie because the Benefit Authorizers were still not trained in 2019
11  see January 19, 2017 EEOC Hearing Transcript Volume 2 page 248 lines 9-25 and page 250
12  lines 1-13 and MSPB Hearing Transcript day 1 page 30 and lines 5-7 and page 205 lines 7-10.
13  Evidence provided show that there were Benefit Authorizers who were not trainees (journeyman
14  level) who were still not SPIKING in August 2018 and that the Benefit Authorizer training
15  manuals do not include training on how to answer SSA's 800 number aka SPIKE. Further proof
16  Debby Ellis lied about Benefit Authorizers were trained to SPIKE during the nine month Benefit
17  Authorizer training is the fact that SPIKE training is about two months long, no reasonable
18  person would claim a Benefit Authorizer completed the nine month training if the training was
19  not actually completed, also Benefit Authorizers do not loss their pay grade because they were
20  not SPIKE trained as Debby Ellis alleged, see January 19, 2017 EEOC Hearing Transcript
21  Volume 2 page 248 lines 9-25 and page 249 lines 1-25 and page 250 line 1 and page 353 lines 3-
22  6 and MSPB Hearing Transcript day 1 page 218 lines 20-25 and page 219 lines 1-11. SSA
23  manager Kris Chamrernlaksa testified "I was hired in September of 2010 as a Benefit
24  Authorizer" confirmed that Benefit Authorizer trainees do not learn to SPIKE during their nine
25  month training or during their three day review and that in June 2019 there were still journeyman
26  level Benefit Authorizers who were still not SPIKE trained proving Debby Ellis lied to EEOC AJ
27  and because EEOC AJ rendered her decision based on Debby Ellis's lies when she testified that
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **45** of 69

1  SPIKE is an essential function of the Benefit Authorizer job she claimed SPIKE training was
2  part of the initial nine month Benefit Authorizer training and that only recently SPIKE training
3  was removed was a lie, per the facts I included and my testimony that I was hired in 2008 and
4  SPIKE training was only given after a BA attained journeyman level status there was no sudden
5  business decision to change training, SSA management confirmed my testimony, see MSPB
6  Hearing Transcript day 1 page 29 lines 21-25 and page 30 lines 1-25 and page 31 lines 1-2.
7  Debby Ellis testified that SPIKE is an intentional overflow of work from the Teleservice Centers
8  who's primary job it is to answer SSA's 800 number and that the Payment Center employees
9  help with the intentional overflow not just the Benefit authorizers. SSA testified that if Benefit
10  Authorizers are answering the phones the Benefit Authorizer work does not get done proving
11  that the Benefit Authorizers primary job function is not answering SSA's 800 number, also SSA
12  managers acknowledge that SSA managers in the modules decide which employees take SPIKE
13  calls, Debby Ellis also states that even on a level 1 SPIKE day not all staff is on the phone all
14  day, per January 19, 2017 EEOC Hearing Transcript Volume 2 page 247 lines 5-25 and page 248
15  lines 1-25 and page 300 lines 8-25 and page 301 lines 1-3. James Dokko acknowledged at the
16  EEOC hearing that we had not reached the last resort and that he did offering me another job or
17  reassignment and that would not happen until "After I've exhausted all different options"  see
18  January 19, 2017 EEOC Hearing Transcript Volume 2 page 337 lines 16-25 and page 338 lines
19  1-5. I would like it pointed out it is disingenuous for EEOC AJ to state in her EEOC Hearing
20  Decision that my attorney and I did not dispute SSA's undisputed facts at the hearing because
21  EEOC AJ extremely limited my attorneys ability to ask questions relating to just the two topics
22  she agreed to hold the hearing under "(1)  Complainant's credibility:  The Agency takes issue
23  with the subjectivity of Ms. Tom's reported symptoms and argues both that (1) Complainant does
24  not have a disabling condition and (2) even if she does, there is no objective evidence that the
25  accommodations provided are not sufficient.  In other words, according to the Agency, Ms. Tom
26  is either imagining her symptoms or is fabricating them.  As such, a credibility determination is
27  required, which precludes summary judgment. (2) Undue hardship:  If Complainant is credible
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   and her symptoms are genuine, then the current accommodations are not working, and the
2   Agency must consider full-time teleworking. To justify not allowing Complainant to telework
3   full-time, the Agency must demonstrate undue hardship.  In its MSJ, SSA did not address the
4   undue hardship of full-time telework because the Agency contends the other accommodations
5   provided are effective. " Please I appealed SSA's undisputed facts and EEOC AJ hearing held in
6   2017 my attorney was not allowed to argue SSA's undisputed facts.

7         SSA refused to provide me a Benefit Authorizer with Reasonable Accommodation of
8   Telework that would have provided me with a fragrance and chemical free work environment
9   and a new clean laptop despite the fact SSA would have suffered no hardship see MSPB Hearing
10  Transcript day 2 page 74 lines 21-23 and page 153 lines 16-22. James Dokko was told by my
11  first line supervisor Kris Chamrernlaksa that Kris recommended that I be approved for telework
12  five days a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11. SSA
13  manager James Dokko acknowledged he was aware that SSA's Medical officer had determined
14  SSA building would be unlikely to provide me with a fragrance and chemical free environment
15  in 2014 and he agreed see MSPB Hearing Transcript day 1 page 220 lines 18-22 and exhibit SSA
16  medical officer determination page 2. SSA provided me with Reasonable Accommodations that
17  required that I work in an SSA building that is not fragrance and chemical free and has been
18  under renovations and construction since 2014 to date, see MSPB Hearing Transcript day 1 page
19  23 lines 11-13 and page 25 lines 22-25 and page 26 line 1 and page 105 lines 5-12 and page 106
20  lines 1-6 page 206 lines 13-14 and page 56 lines 6-25 and page 57 lines 1-6 and page 184 lines
21  21-22. SSA also acknowledges that none of the facilities/buildings SSA could have relocated me
22  to would be fragrance and chemical free and none of the facilities/buildings they placed me in
23  would be able to provide me with a restroom or location where I could eat that was fragrance and
24  chemical free see MSPB Hearing Transcript day 2 page 3 lines 14-18 and page 6 lines 21-25 and
25  page 7 lines 1-7 and page 8 line 1-5. SSA does not deny having provided over 20 qualified
26  disabled Benefit Authorizers the Reasonable Accommodations of Telework since at least 2016.
27  SSA does not deny having proved over 100 qualified Benefit Authorizers with approval under
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **47 of 69**

1  Article 39 Work at Home by Exemption since at least 2015, which allows employees to telework
2  five (5) days a week for up to a year with the possibility of continued approval under Article 39.
3  SSA subjecting me to Disability Discrimination 42 U.S.C. § 12112(b)(5) because SSA refused to
4  my requests for approval of the Reasonable Accommodation of Telework despite knowing that
5  SSA buildings could not provide me with a fragrance and chemical free work environment
6  denying me the ability to continue to work full time like other qualified disabled benefit
7  Authorizers who were approved the reasonable accommodation of telework and approval under
8  Article 39. SSA also refused all request to allow me to try Reasonable Accommodation of
9  Telework on a limited basis to prove I could Telework five (5) days a week, which proves SSA
10 was not acting in good faith and that I was treated me less favorably than the 20+ other qualified
11 disabled Benefit Authorizers who were approved for the available Reasonable Accommodation
12 of Telework full time and less favorably than the 100+ qualified Benefit Authorizers who were
13 approved for Work at Home By Exemption. SSA does not dispute the fact that there is at least
14 one Benefit Authorizer who is not disabled who was approved to work "a long term virtual
15 detail". SSA acknowledges that while I was employed I was a good employee in good standing,
16 qualified to perform the essential functions of my job, and throughout my career I have received
17 successful performance appraisals. SSA acknowledges that from August 2016 through August
18 18, 2018 my last day, I worked 100% solely via telework under the Pilot Telework program and
19 I did not telework as a reasonable accommodation. Under the Pilot Telework program during the
20 period between August 2016 through August 18, 2018 I worked once a week with the exception
21 of a three month period in 2017 where I worked twice a week along with the other pilot
22 Telework Benefit Authorizers. SSA does not dispute the fact that in July 2014 SSA employee a
23 Medical Officer informed the SSA management and CREO "Even if Ms. Tom is eventually
24 found to be an individual with a disability per the RA, the requested accommodation of scent
25 free work environment is impractical in most public buildings. Furthermore, Ms. Tom is unlikely
26 to avoid similar exposures if she visits public places such as shopping malls. restaurants, grocery
27 stores and numerous others." see exhibit SSA Medical Officer determination page 2 of 2. Leslie
28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    Kern Operations Manager confirmed the Medical Officer's claims stating "As stated in the
2    notice you received, the Agency is not able to provide a scent free workplace for any
3    employee.". Ms. Kern's assessment of possible Reasonable Accommodations is inaccurate as she
4    seems not to know that Telework is a possible Reasonable Accommodation which would provide
5    any employee with fragrance and chemical free environment. Agency's Medical Officer and Ms.
6    Kern's statements are proof that SSA has known since July 2014 that any accommodation SSA
7    provided me which required me to work in an SSA occupied building that did not have a
8    standing fragrance and chemical free policy would not be an effective Reasonable
9    Accommodation. SSA chose to approved me the following Reasonable Accommodations
10   including but not limited to gloves, face masks, excused from Spiking/answering the Agency 800
11   number, air purifier in 2015, start once a week telework ahead of the other Benefit Authorizers in
12   the Pilot Telework program, one on one training instead of attending group training, one on one
13   meetings instead of attending group meetings, moved me over 26 times (including locations on
14   all six (6) floors in cubicles and rooms) and Liberal Leave and flex leave which allowed me to
15   take leave without having to provide medical documentation for each day I was out sick due to
16   my disability and on days I had to leave work early due to my disability being aggravated
17   instead of the Reasonable Accommodation of telework. SSA refusal to provide me with an
18   effective Reasonable Accommodation of Telework even though SSA has approved more than 20
19   other qualified disabled Benefit Authorizers because SSA believed the approved Reasonable
20   Accommodations of Liberal Leave, gloves, masks, and an air purifier in a building that is under
21   construction since 2014 that not fragrance and chemical free was an effective alternative to the
22   reasonable accommodation of telework despite by my first line supervisor Kris Chamrernlaksa
23   that Kris recommended that I be approved for telework five days a week, see MSPB Hearing
24   Transcript day 1 page 27 lines 5-6 and lines 9-11. SSA does not dispute the fact that I was
25   providing SSA with quality work while I was working 100% via telework since July 26, 2016
26   through August 15, 2018 and received successful performance appraisals. SSA does not dispute
27   the fact that there were Benefit Authorizers who completed the Benefit Authorizer training and
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

passed their three day examination who have never Spike/answer the 800 number and that SPIKE training is about two months, which proves answering SSA 800 number is not part of the Benefit Authorizer nine month training and not a skill that is required for a Benefit Authorizer to become a journeyman level employee; Debby Ellis testified at the EEO hearing that **"By the time you are a journeyman level, you're expected to be able to do all the major duties and sustain those job duties."**(bolded for emphasis) proving SPIKE is not an essential function of the Benefit Authorizer job, see MSPB Hearing Transcript day 1 page 29 lines 21-25 and page 30 lines 1-25 and page 31 lines 1-3 and January 19, 2017 EEOC Hearing Transcript Volume 2 page 251 lines 12-14 page 353 lines 3-6. SSA denied me access to an available effective reasonable accommodations, full pay, continued employment, fringe benefits for example the ability to qualify for bonuses, the ability to earn and keep a positive leave balances, keep my job, as well as the benefit of not worsening my health condition and reducing my quality of life into the future. SSA allowed a co-worker I named as one of my harassers to work hand in hand with management on how SSA would handle my reasonable accommodations requests. SSA management also participated triggering my disability by wearing perfume and forcing me to meet with them in meetings and also humiliated me in meetings one incident my SSA manager asking me in a group meeting to move and sit right next to the co-worker I had reported as being my harasser and someone they knew to wear perfume that triggered my disability when I declined SSA managers request she and laughed out loud before my peers and it made both me and the co-worker visibly upset and I found the incident very humiliating and just another attempt by SSA management to make an already difficult situation worst. I would like it noted that nothing came of my reports of SSA managerial harassment, SSA management was allowed to continue to harass me because the investigator also an SSA manager believed each incident was isolated and that it would be inappropriate to add up/compile the incidents of harassment committed by the same SSA manager together to show that there was an ongoing pattern of harassment. The record shows that SSA management believed that employees rights to wear and use fragrances and chemicals were more important than my right to a fragrance and chemical TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1  free/a healthy and safe working environment for me and that SSA management decided it would
2  be better to have me to move away from my harasser to resolve the issue and for me to take my
3  health in my own hands and move away from fragrances instead of removing fragrances away
4  from me which is against policy. See exhibit for the SSA policy Reasonable Accommodations
5  Request Involving Fragrance Sensitivity Policy. Reasonable Accommodations Request Involving
6  Fragrance Sensitivity Policy is found on SSA's intranet Center for Disability Services-
7  Consultation Corner, it lists what accommodations SSA can provide: "If possible, eliminate the
8  offending odor or chemical; Alert the employee when you detect fragrances or chemical odors;
9  Change Desk location; Allow the employee to work from home; Temporary/permanent transfer;
10 Reassignment." SSA determined that they could not eliminate fragrances and chemical odors
11 back in 2014, SSA did not alert me to fragrance and chemical odors, SSA moved over 26 times
12 throughout the building and still SSA refused to allow me to work from home as a Reasonable
13 Accommodation even though I had proven I was capable of working full time via telework and
14 earn successful performance appraisals. My first line manager was asked if he would have
15 allowed me to telework five (5) days a week he said based on the quality of my work he would
16 have see MSPB Hearing Transcript day 1 page 26 lines 16-25 and page 27 lines 1-6. It is
17 important to note there were journeyman level Benefit Authorizers who are still not SPIKE
18 trained and were not SPIKE trained in 2018 either per MSPB Hearing Transcript day 1 page 30
19 lines 5-8. Reading my response above you can see SSA's conduct is discriminatory with respect
20 to my disabilities and that SSA management based their decisions on their beliefs and not on
21 based what reasonable accommodation I needed to effectively accommodate my disabilities.

22      MSPB Hearing Transcript day 2 page 20 lines 20-25 MSPB AJ asks James Dokko

23          "As someone who is a benefit authorizer in your office, can you -- is there any

24          situation in which you can permanently approve as a reasonable accommodation -

25          - assuming the medical documentation supports it -- someone permanently

26          teleworking five days a week as a reasonable accommodation?"

27      MSPB Hearing Transcript day 2 page 21 lines 1-3 James Dokko say:

28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:
Page No. **51** of **69**

1  "I've never explored that. Would it be -- could that be a possibility, possibly?

2  Personally, I do not believe so. But at this time --".

3  I was in reasonable accommodations talks with James Dokko since 2015 when he

4  became Operations Manager over my module and in the approximately five (5) years he handled

5  my reasonable accommodations request for telework full time and he never determined if

6  telework was an accommodation available for Benefit Authorizers, however James Dokko

7  continued to recommend SSA deny my reasonable accommodations requests because he falsely

8  believed if I was approved for telework would remove an essential function of my job. James

9  Dokko was told by my first line supervisor Kris Chamremlaksa that Kris recommended that I be

10  approved for telework five days a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6

11  and lines 9-11. I was denied based an effective available reasonable accommodation of telework

12  based on James Dokko's false assumption SSA did not approve Benefit Authorizers the

13  reasonable accommodation of telework five days a week. It is important to note that SSA's

14  National Reasonable Accommodations Coordinator (NRAC) based their decision solely on

15  James Dokko's recommendation and did not do their job and confirm James Dokko's that claims

16  answering the 800 number was an essential job function and that Benefit Authorizers could not

17  be approved for the Reasonable Accommodation of Telework "Ms. Stenzel stated she does not

18  recall if 800 calls were determined to be an essential function of the job or to the extent to which

19  she considered the issue." See exhibit Articles and Emails – exhibit "Statement From NRAC

20  decision maker..."

21  With regard to the SSA's assertion that SSA effectively reasonably accommodated me

22  when SSA denying my reasonable accommodation request of full time telework opting instead to

23  approved reasonable accommodations of air purifier that was over one thousand dollars, moved

24  over 26 times and was placed in an office, was provided masks glove, Liberal Leave and flexible

25  leave, none of the reasonable accommodations provided enabled me to return to work full time,

26  proves SSA did not respond expeditiously to my request for an effective reasonable

27  accommodation. Even though my first line supervisor Kris Chamremlaksa recommended that I

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

be approved for telework five days a week SSA still refused to approve my reasonable accommodations request for telework opting instead to fire me for being out sick, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11 and MSPB Hearing Transcript day 1 page 95 lines 3-14. EEOC Enforcement Guidance on Reasonable Accommodation, at Question 10 (Oct. 17, 2002). Therefore, the Commission has held that failure to respond to a request for accommodation in a timely manner may result in a finding of discrimination. See Shealy v. EEOC, EEOC Appeal No. 0120070356 (April 18, 2011); Villanueva v. Department of Homeland Security, EEOC Appeal No. 01A34968 (August 10, 2006). In this case, I am claiming that SSA's inaction and delays drove me out of the workplace for a significant period of time, which SSA used as an excuse to terminate me even though SSA knew I am a qualified disabled employee who was still in reasonable accommodation talks with SSA management up until my termination, it is important to note that my first line supervisor Kris Chamrernlaksa recommended that I be approved for telework five days a week instead of being terminated, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11 and MSPB Hearing Transcript day 2 page 81 lines 6-20 and page 92 lines 3-14. SSA management continued to claim that reasonable accommodations and termination based on being out sick were two different issues but they are not separate had I been provided an effective reasonable accommodation I would not have been out sick. After all, I had not received the requested reasonable accommodations from SSA, and SSA's inaction had negatively impacting my health causing me to also need reasonable accommodations for vertigo and migraines with aura in addition to my original disability sensitivity to environmental irritants. SSA's inactions also affected my quality of life and future quality of life. Faced with negative impacts on my declining health, I had no choice but to ask for leave while I tried to get SSA to work with me to provide me a new reasonable accommodation and not the same accommodation located in a different area. Further, SSA had may opportunities since 2014 to mitigate the negative impact on me through SSA's National Reasonable Accommodation Coordinator (NRAC), but instead of the NRAC employee doing their own independent review of SSA policy to determine if SSA had decided if Benefit Authorizers could

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   perform the essential functions of their job from home via telework as a reasonable
2   accommodation the NRAC decision maker just blindly accepted James Dokko's
3   recommendation to deny my request. "Ms. Stenzel stated she does not recall if 800 calls were
4   determined to be an essential function of the job or to the extent to which she considered the
5   issue." See exhibit "Statement From NRAC decision maker…" . James Dokko ignored my first
6   line supervisor Kris Chamrernlaksa recommended that I be approved for telework five days a
7   week, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11. SSA used the sick
8   leave they forced me to take as an excuse to halt the interactive process and terminate me for
9   being absent from work instead of working with me to provided me with reasonable
10  accommodations that would return me to work full time see MSPB Hearing Transcript day 2
11  page 81 lines 6-20. I would have need for leave for the foreseeable future as a consequence of
12  James Dokko's belief "we provided an accommodation that I feel was appropriate, which was a
13  locked office, air purifier, air guard, flexible leave when you are in the building." Even though
14  SSA acknowledges that I still had fragrance and chemical odors in the room with the air purifier,
15  and James Dokko acknowledges that SSA is unable to prevent my exposure to fragrances and
16  chemicals in SSA buildings all SSA could do was try and limit my exposure in the buildings,
17  proving SSA was aware I was being exposed while I was in SSA buildings and therefore proving
18  the provided reasonable accommodations in the buildings are not as effective as the reasonable
19  accommodation of telework is, because in my home I can eliminate my exposure to fragrances
20  and chemicals see MSPB Hearing Transcript day 2 page 6 lines 21-25 page 7 lines 1-4 and page
21  130 lines 22-25. SSA's failure to provide me with an effective reasonable accommodation of
22  telework even after James Dokko was told by my first line supervisor Kris Chamrernlaksa
23  recommended that I be approved for telework five days a week, plus the fact SSA has provided
24  to over 20 other qualified disabled Benefit Authorizers without hardship to SSA proves there is
25  disability discrimination and retaliation for filing EEO complaints. Therefore, SSA cannot credit
26  itself for providing me with leave that I likely would not have needed if SSA had promptly and
27
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    appropriately responded to my please for an effective reasonable accommodation and has

2    followed my first line's recommendation for approving me to work telework five days a week.

3        Also, absent undue hardship, SSA should provide my reasonable accommodation request

4    for full time telework that would have permit me to keep working rather than choosing to force

5    me to take leave as a reasonable accommodation. 29 C.F.R. 1630.1 provides that the primary

6    purpose of Title I of the ADA, as amended by the ADAA, is to provide equal employment

7    opportunities for individuals with disabilities. Leave removes an employee from the workplace

8    and therefore denies the employee the opportunity to keep working with reasonable

9    accommodation. Please also note that a reasonable accommodation must be effective. If a

10   reasonable accommodation – full time telework -- permits an employee to perform the essential

11   functions of their position, then that accommodation is effective and leave is not effective in

12   permitting immediate performance of essential functions of a position.

13       While an employer may choose between effective accommodations, forcing an employee

14   to take leave when another accommodation would permit an employee to continue working is

15   not an effective accommodation. See Mamola v. Group Mfg. Services, Inc., 2010 WL 1433491

16   (D. Ariz. April 9, 2010) (unpaid leave may not be a reasonable accommodation when an

17   employee specifically requests another accommodation that would allow him or her to perform

18   the essential functions of the position without missing work); Woodson v. Int'l Bus. Machines,

19   Inc., 2007 WL 4170560, at 5 (N.D. Cal. Nov. 19, 2007) (leave is sufficient as a reasonable

20   accommodation only if other accommodations in a job would be ineffective). In this case, the

21   SSA failed to provide me with my requested accommodations that would have allowed me to

22   continue working full time, even though my first line supervisor recommendation that I be

23   approved for telework five days a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6

24   and lines 9-11. Consequently, I was forced to take leave, much of it unpaid and was eventually

25   unlawfully removed from my position due to SSA's continued refusal to approve my reasonable

26   accommodations request for telework despite the fact I was already working 100% via telework

27   since July 26, 2016 through August 15, 2018. During July 26, 2016 through August 15, 2018 I

28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   teleworked about once a week and received successful performance appraisals SSA management

2   acknowledged I was not being terminated for my performance but because I was out sick. James

3   Dokko also ignored my first lines recommendation to approve me for telework five days a week,

4   see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11. James Dokko never

5   explored if it was possible for a Benefit Authorizer to be approved for the reasonable

6   accommodation of telework, thus proving James Dokko did not try everything before approving

7   my termination, see

8       MSPB Hearing Transcript day 2 page 20 lines 20-25 - James Dokko

9       JUDGE RIBAS: As someone who is a benefit authorizer in your office, can you -- is

10      there any situation in which you can permanently approve as a reasonable

11      accommodation -- assuming the medical documentation supports it -- someone

12      permanently teleworking five days a week as a reasonable accommodation?

13      MSPB Hearing Transcript day 2 page 21 lines 1-3 – James Dokko

14      THE WITNESS: I've never explored that. Would it be -- could that be a possibility,

15      possibly? Personally, I do not believe so. But at this time –

16

17      MSPB Hearing Transcript day 1 page 205 lines 17-25 – James Dokko

18      Q Did you inquire as to whether or not benefit authorizers within the Western Payment

19      Program Service Center had been approved to telework five days a week?

20      A I did not inquire, and it's the Western Program Service Center.

21      Q Why did you not inquire?

22      A There was no reason for me to inquire.

23      Q Wouldn't it have been important to know whether or not the Agency has a policy of

24      providing other benefit authorizers the

25      MSPB Hearing Transcript day 1 page 206 lines 1-14

26      reasonable accommodation of five days a week prior to making your recommendation to

27      make sure you went in line with Agency policy?

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

A So like I stated in regards to reasonable -- in regards to your specific reasonable accommodation request, I evaluated all the medical documentation I received, our conversations that we've had, and I -- based on your documentation, the accommodations we provided were appropriate and actually recommended by your doctor, and we provided an accommodation that I feel was appropriate, which was a locked office, air purifier, air guard, flexible leave when you are in the building.

Q Is the building fragrance and chemical free?

A No.

MSPB Hearing Transcript day 1 page 61 lines 22-25 – Kris Chamrernlaksa

Q Was management aware I was out sick?

JUDGE RIBAS: If you can answer the question, you can answer the question; if you cannot, you have to state you cannot answer.

MSPB Hearing Transcript day 1 page 62 lines 1-2 – Kris Chamrernlaksa

THE WITNESS: The -- the reason you gave us was because you were sick, so yes.

MSPB Hearing Transcript day 1 page 91 lines 4-6 – Carmelita Rivera

Q Isn't it true that my performance appraisals have been successful?

A Yes, that's true.

MSPB Hearing Transcript day 1 page 115 lines 8-12 – Carmelita Rivera

Q So you're saying that you had no responsibility as the manager suggesting my removal to take any action to provide me with an effective accommodation?

A I was only responsible for my decision on the AWOL. All the reasonable accommodations were handled by James.

MSPB Hearing Transcript day 1 page 116 lines 14-25 – Carmelita Rivera

Q I don't -- okay. I don't think you're understanding my question. Does an employee have to be in good standing in order to telework?

A Sure, yes.

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. 57 of 69

1    Q What was -- my last day of employment, did I telework?

2    A I believe you did.

3    Q While I was being charged with AWOL, was I approved to earn credit hours?

4    A You were. You were. You worked 11 hours a day.

5    Q Okay. And while the Agency was approving benefit authorizers to telework two days a

6    week in 2017 for approximately three months, did I also earn overtime?

7    MSPB Hearing Transcript day 1 page 117 lines 1-25 – Carmelita Rivera

8    A I don't remember if you requested to work overtime or not. I mean, what pops in my

9    head is that you worked credit most of the time that you worked after your eight hours.

10   Q But an employee has to be in good standing for the approval of a credit or overtime; is

11   that correct?

12   A Yes.

13   Q And an employee charged with actual AWOL would not have been approved; is that

14   correct?

15   A Yes. Yeah, I guess. Yes.

16   JUDGE RIBAS: Ms. Tom, do you mind if I try to -- I think I understand what you're

17   getting at. Do you mind if I try to ask the witness a question? You can tell me if this is --

18   MS. TOM: Absolutely. Please go ahead.

19   JUDGE RIBAS: I think what Ms. Tom is trying to ask is how can you simultaneously

20   approve her for telework and overtime and claim she was being AWOL within the same

21   week?

22   Is that fair to say? Is that what you're trying to get at?

23   MS. TOM: Yes.

24   BY MS. TOM:

25   Q How can I be granted --

26   JUDGE RIBAS: How can --

27   BY MS. TOM:

28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1     Q -- a benefit of being a good standing employee, if you're

2     MSPB Hearing Transcript day 1 page 118 lines 1-4 – Carmelita Rivera

3     claiming that I was misbehaving?

4     A We didn't go that route as far as her, you know, being -- penalizing her telework for

5     that. I just solely went on her being absent from work.

6

7     MSPB Hearing Transcript day 1 page 91 lines 19-25 – Carmelita Rivera

8     Q So prior to issuing this notice, you never attempted to reasonably accommodate me?

9     A I was not involved in your reasonable accommodation, Jennifer -- Ms. Tom.

10     Q But you listed having considered all of the available options prior to proposing my

11     termination?

12     A The proposal for removal was based on AWOL.

13     MSPB Hearing Transcript day 1 page 127 lines 4-6 - Carmelita Rivera

14     Q Are you aware I was not reporting to the building due to a medical condition?

15     A I am.

16

17        The witness is looking at exhibit SSA Medical Officer determination pages 1 and 2 states

18 "Even if Ms. Tom is eventually found to be an individual with a disability per the RA, the

19 requested accommodation of scent free work environment is impractical in most public

20 buildings. Furthermore, Ms. Tom is unlikely to avoid similar exposures if she visits public places

21 such as shopping malls, restaurants, grocery stores and numerous others." for this testimony

22     MSPB Hearing Transcript day 1 page 139 line 22 – Carmelita Rivera

23     "A Yes, Nadeem Sadeke, MD. Medical Officer Headquarters.

24     MSPB Hearing Transcript day 1 page 140 lines 3-7

25     Q So this is a Social Security medical officer's determination; is that correct?

26     A Yes.

27

28 TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Q And what does he determine as far as the building's ability to provide me with the accommodation that I need?

MSPB Hearing Transcript day 1 page 140 lines 23-25 – Carmelita Rivera

Q I'm only asking you with regards to this document. As far as it states that as far back as 2013, the Agency was aware that the building wouldn't be able to provide me with a

MSPB Hearing Transcript day 1 page 141 lines 1-6 – Carmelita Rivera

fragrance and chemical free work environment and had you known that, would you still have issued the notice of proposed removal?

A If you were not showing up to work, and we've provided you with the accommodations that you have, I would have still AWOL'd you.

MSPB Hearing Transcript day 1 page 88 lines 2-5 – Carmelita Rivera

Q **During that period of time, if that leave had been approved as leave without pay instead of AWOL, would you still have issued this notice?**

A **If you had not shown up to work? Maybe**.

MSPB Hearing Transcript day 1 page 105 line 5-12 – Carmelita Rivera

Q It did, but -- okay. So are you aware that I needed a fragrance- and chemical-free environment?

A Oh, yes. I am aware of that.

Q And is the building a chemical- and fragrance-free environment?

A I would assume no, just like any other place. There's not a whole lot of areas that are chemical and fragrance free, as far as I know.


MSPB Hearing Transcript day 1 page 220 lines 18-22 – James Dokko

Q Are you aware that the Social Security medical officer had determined that it would be unlikely for the building to provide me with a fragrance and chemical free environment?

A **I believe that is correct, and I believe my testimony also stated that.**(bolded for emphasis)

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1

2   MSPB Hearing Transcript day 2 page 50 lines 8-16 – James Dokko

3   JUDGE RIBAS: Okay. So was the -- do during this time frame of July 21st, 2016,

4   through August 2018 -- is that the time frame you're concerned about, Ms. Tom?

5   MS. TOM: Yes, Your Honor.

6   JUDGE RIBAS: Okay. Was Ms. Tom successfully performing her position?

7   THE WITNESS: So Ms. Tom -- she received a performance (sic) that was considered

8   meeting her performance, correct.

9   The SSA/AFGE National Agreement Article 21 Performance which discusses how SSA

10  managers are to grade their staff and no were in Article 21 does it say that an employee who

11  receives a "Level 3 – Successful Contribution" rating would be found not to be  performing the

12  essential functions of their job and see January 19, 2017 EEOC Hearing Transcript Volume 2

13  page 109 lines 3-16.

14      MSPB Hearing Transcript day 2 page 81 lines – James Dokko

15      Q Did you try to provide me with a reasonable accommodation in alternative of

16      terminating me?

17      A So the termination and the reasonable accommodation, those are two separate things.

18      Now, the reasonable accommodation, you know, as I stated, you know, before my prior

19      testimonies of everything that I've offered, everything that we've been trying out,

20      including that third room, which you did not try -- now, your removal was based on

21      conduct. It was based on absence without leave.

22      MSPB Hearing Transcript day 2 page 89 lines 11-22 – James Dokko

23      Q Why do you believe that removing a -- removing an employee who has had 10 years of

24      successful performance with the agency, who has been cash awarded for performance

25      would improve the efficiency of the agency?

26      A So, Ms. Tom, as I stated earlier, you were removed for a conduct issue, not your

27      performance. I admit when you are working, you're a good employee. I do not deny that.

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

And, you know, your management team agrees with that. You were based on a uniformly applied conduct rule that you violated that is job related, and that's the reason why you were removed from service. You weren't removed from service because you did a bad job.

MSPB Hearing Transcript day 2 page 143 lines 6-8 – Debby Ellis
Q To the best of your knowledge, I have received successful performance appraisals; is that correct?
A To the best of my knowledge, yes.

MSPB Hearing Transcript day 1 page 26 lines 16-18 - Kris Chamrernlaksa
Q Okay. So if you could have approved me to telework five days a week based on the quality of my work, would you have?
A Yes, I would.
MSPB Hearing Transcript day 1 page 26 lines 23-25 - Kris Chamrernlaksa
Q Did management ever ask you, as my first line supervisor, whether or not you believed that instead of terminating me offering me the ability to telework five days a week or the
MSPB Hearing Transcript day 1 page 27 lines 1-6 - Kris Chamrernlaksa
fulltime should have been tried before proposing my termination?
A Yes, I was asked.
Q And what was your answer?
A Pretty much that the quality of your work would -- would be good and that you'd be okay to telework five days a week,
MSPB Hearing Transcript day 1 page 27 lines 9-11 - Kris Chamrernlaksa
Q Who did you give that recommendation to?
A Carmelita and James Dokko. Carmelita Rivera and James Dokko.

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1    So based on the evidence and testimony I was denied the reasonable accommodation of

2    telework for no lawful reason, I am a qualified disabled employee who received successful

3    performance appraisals while working 100% via telework from July 26, 2016 through August

4    15, 2018 (when I was wrongfully terminated) under SSA's pilot telework program and without

5    an reasonable accommodation. Although SSA was made aware by SSA's Medical Officer back

6    in 2014 (see exhibit SSA Medical Officer determination) that "...the requested accommodation

7    of scent free work environment is impractical in most public buildings. Furthermore, Ms. Tom is

8    unlikely to avoid similar exposures if she visits public places such as shopping malls, restaurants,

9    grocery stores and numerous others." SSA still insisted on providing reasonable accommodations

10   that required I work in SSA occupied buildings SSA knew were not fragrance and chemical free

11   even though SSA had moved me over 26 times since 2014 and because of SSA's delays in

12   providing me with an effective reasonable accommodations my health continued to decline to the

13   point where I went from needing one disability sensitivity to environmental irritants

14   accommodated to needing a total of three disabilities accommodated sensitivity to environmental

15   irritants, vertigo and migraines with aura see MSPB Hearing Transcript day 1 page 23 lines 14-

16   19 and page 104 lines 20-23. Despite SSA knowing that the reasonable accommodations SSA

17   had provided me had been ineffective SSA continued to stand by James Dokko's assessment that

18   he had effectively accommodated me when he "provided an accommodation that I feel was

19   appropriate, which was a locked office, air purifier, air guard, flexible leave when you are in the

20   building" even though James Dokko received a recommendation from my first line supervisor

21   Kris Chamrernlaksa that I be approved for telework five days a week, see MSPB Hearing

22   Transcript day 1 page 27 lines 5-6 and lines 9-11. EEOC AJ told SSA in her email dated October

23   31, 2016 that "If Complainant is credible and her symptoms are genuine, **then the current**

24   **accommodations are not working, and the Agency must consider full-time teleworking.** To

25   justify not allowing Complainant to telework full-time, the Agency must demonstrate undue

26   hardship. In its MSJ, SSA did not address the undue hardship of full-time telework because the

27   Agency contends the other accommodations provided are effective." (bolded for emphasis) SSA

28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   was notified by EEOC AJ that the accommodations that SSA had been providing me were not
2   working but SSA continued to provide variations of the exact same reasonable accommodations
3   that had proven to be ineffective (SSA just move me from one spot to another spot in a building
4   that is not fragrance and chemical free that uses a recirculated air system), SSA continued to
5   claim they would be unable to determine if new variation of the same failed accommodation was
6   ineffective unless I tried it, see MSPB Hearing Transcript day 2 page 13 lines 22-25 and page 14
7   line 1.

8       EEOC AJ only ruled I was not a qualified disabled employee because of SSA's
9   Managements lied in their testimony that I could not perform all the essential job functions of my
10  job if I was approved for the reasonable accommodations of telework which is not true because
11  SSA has approved over 20 Benefit Authorizers the RA of telework since 2016 and over 100
12  disabled Benefit Authorizers Article 39 Work at Home by Exemption, see exhibits provided in
13  my initial complaint dated May 17, 2019 labeled "Agency's Response to Appellant's Request for
14  Production #6 as amended in the Board's April 25, 2019 Order" and dated May 3,
15  2019"Agency's Response to Appellant's Request for Production #6 as amended in the Board's
16  April 25, 2019 Order" EEOC AJ also errored in not giving proper weight to the fact I received
17  successful performance appraisals while working 100% via telework from July 26, 2016 through
18  August 15, 2018 (when I was wrongfully terminated) under SSA's pilot telework program and
19  by virtue of the fact I received successful performance appraisals without a reasonable
20  accommodation I am a qualified disabled employee per case law: *Lavern B. v. Dep't of Housing*
21  *and Urban Development,* EEOC No. 0720130029 (EEOC OFO 02/12/15) and *Kohner v. Dep't of*
22  *Transportation* EEOC Appeal No. 0120110334, 1 (September 14, 2012) *Latarsha A. v. Federal*
23  *Energy Regulatory Commission*, EEOC Appeal Nos. 0120123215, 0120131079 (Mar. 15, 2016).
24  EEOC AJ also errored in not taking into account the fact SSA management lied under oath
25  during the hearing multiple times and SSA Counsel also lied to EEOC AJ in communications
26  prior to hearing, see the exhibits 6,7,8 and 9 in exhibits Communications with EEOC AJ and
27  Agency Counsel, me, my Counsel for EEO case.

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1         The MSPB AJ failed to go through the evidence and accept the evidence I provided in my
2    appeal to MSPB as fact, despite the fact I provided evidence that showed SSA approved over 20
3    Benefit Authorizers the RA of telework since 2016 and over 100 disabled Benefit Authorizers
4    Article 39 Work at Home by Exemption since 2015, see exhibits provided in my initial
5    complaint dated May 17, 2019 labeled "Agency's Response to Appellant's Request for
6    Production #6 as amended in the Board's April 25, 2019 Order" and dated May 3,
7    2019"Agency's Response to Appellant's Request for Production #6 as amended in the Board's
8    April 25, 2019 Order" came from SSA's counsel. MSPB AJ ignored the fact that Debby Ellis
9    lied when she said Benefit Authorizers received SPIKE training during the Benefit Authorizer
10   nine month training, testimony provided by James Dokko acknowledged that SPIKE training
11   was an additional 2 months, see January 19, 2017 EEOC Hearing Transcript Volume 2 page 248
12   lines 9-25 and page 249 lines 1-25 and page 250 lines 1-13 and page 353 lines 3-6. Debby Ellis
13   admitted she lied and that there were Benefit Authorizers who were not trained to SPIKE during
14   the nine month Benefit Authorizer training, it would have been impossible to complete the
15   Benefit Authorizer nine month training and the two month SPIKE training in nine months,
16   Debby Ellis claimed the Benefit Authorizers who were still not SPIKE trained would be by
17   spring of 2017 no matter what, I provided evidence to the MSPB AJ that the Benefit Authorizers
18   who were still not SPIKE trained were still not trained by August 2018.

19        Even though the MSPB AJ had definitive evidence SSA lied under oath on the key points
20   EEOC AJ used to render her decision in SSA's favor. The most important fact SSA lied about
21   was not being able to approve my reasonable accommodation of telework because it would
22   remove an essential function of the job and that I was the only employee who was excused from
23   SPIKE, **the fact is SSA was approving qualified disabled Benefit Authorizers with telework**
24   **as a reasonable accommodation SINCE 2016 none of the Benefit Authorizers who were**
25   **approved for the reasonable accommodation of telework or approved for Article 39 were**
26   **required to SPIKE and were allowed to telework full time.** Even with the facts laid out for
27   MSPB AJ at her feet, MSPB AJ still decided to blindly agree with SSA that SSA lawfully denied
28   TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **65 of 69**

me an available effective reasonable accommodation of telework even though it would have not caused SSA any undue hardship and the RA of telework would have returned me to work full time therefore removing all future need for leave due to my disabilities. SSA management fired me for being out sick due to my disabilities, there is no mistaking the fact SSA's refusal provided me with available effective reasonable accommodation of telework was the sole reason I was not working full time five days a week and that if SSA was able to provide telework full time five days a week to over 20 other qualified disabled Benefit Authorizers and over 100 other qualified disabled Benefit Authorizers there is no lawful reason I would be denied, especially since I have tried moving around in an SSA occupied building since 2014 and it has been ineffective (EEOC AJ even acknowledged SSA was not effectively accommodating me see exhibit 15 in communications package), SSA's Medical Officer came to the conclusion that SSA could not provide me with an effective accommodation of a scent free environment in the building back in 2014 it is disingenuous for MSPB AJ to claim SSA acted in good faith and by refusing to provide the one reasonable accommodation that would actually provide me with a work space outside of SSA's occupied buildings and would enable me to return to work full time. MSPB AJ failed to note SSA tried variations of the exact same accommodation room with air purifier and approve sick leave even though those accommodations had proven in effective, so ineffective I was terminated for the use of sick leave. I have lost over $249,118.89 in lost income just through November 8, 2019, if I were to retire at 66 I would have lost an estimated total of $3,023,929.66 assuming an estimated cost of living increase of 2% not including step increase or future bonus or future 401K losses see exhibit TSP documents and Lost wage Calculations to see how I arrived at these numbers. SSA's actions have not only effected my health and ability to support myself SSA's actions have affected my quality of life past, present and future. I have to live with the consequence of SSA's refusal to act timely in 2014 to my request for an effective reasonable accommodation of telework, and the fact James Dokko ignored the recommendation of my first line supervisor Kris Chamrernlaksa that I be approved for telework five days a week, see MSPB Hearing Transcript day 1 page 27 lines 5-6 and lines 9-11.  Had I been able to find work

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   elsewhere I would have the problem I had was SSA management were the ones that provided
2   references for the jobs I applied to and the SSA manager I had at the time Mireille Hanft wanted
3   me to stay in the module so that I could share my job knowledge. The most depressing thing is
4   that SSA provides qualified disabled Benefit Authorizers the reasonable accommodation of
5   telework and the fact James Dokko ignored the recommendation of my first line supervisor Kris
6   Chamrernlaksa that I be approved for telework five days a week, proof there was no lawful
7   reason for me to have been denied the reasonable accommodations of telework or for me to have
8   lost my job, SSA managers acknowledge I am a good employee and that my work "…I admit
9   when you are working, you're a good employee. I do not deny that. And, you know, your
10  management team agrees with that…" MSPB Hearing Transcript day 2 page 89 lines 16-18 And
11  "..You weren't removed from service because you did a bad job." MSPB Hearing Transcript day
12  2 page 89 lines 21-22. If James Dokko did not ignore my first line supervisor Kris
13  Chamrernlaksa recommendation to approve my request to telework five days a week or if James
14  Dokko allowed my first line supervisor to issue his recommendation to the NRAC I would have
15  been approved for telework five days a week based on the quality of my work, see MSPB
16  Hearing Transcript day 2 page 26 lines 16-25 and page 27 lines 1-6. SSA still decided to
17  terminate my employment even though my first line supervisor Kris Chamrernlaksa
18  recommendation to approve my request to telework five days a week instead of being terminated
19  and because it was in reasonable accommodations talks with SSA see MSPB Hearing Transcript
20  day 1 page 27 lines 5-6 and lines 9-11 and MSPB Hearing Transcript day 2 page 95 lines 3-10,
21  the only reason I was not working full time was because SSA's decided to continue to deny me
22  the requested available reasonable accommodation of telework, despite the fact SSA was already
23  providing the reasonable accommodation of telework to 20 other qualified disabled Benefit
24  Authorizers and my first line supervisor recommended I be approved. The facts show I was still
25  in good standing up until the day I was terminated because I was allowed to continue to telework
26  under the pilot telework program and was approved to work credit and over time while working
27  100% via telework see MSPB Hearing Transcript day 1 page 46 lines 11-25 and page 47 line 1
28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

1   and page 48 lines 12-25 and page 49 lines 7-14 and page 116 lines 14-25 and page 117 lines 1-25

2   page 118 lines 1-6 and page 107 lines 16-20. It is also important to note that I did not have a

3   disciplinary record prior to my removal on August 15, 2018, see MSPB Hearing Transcript day 2

4   page 87 lines 17-19. SSA failed to abide by Article 31  Time and Leave - Section 3. Excused

5   Absences - B.  When management determines that exposure to unsafe or unhealthy working

6   conditions which cannot be immediately corrected may result in the likelihood of illness or

7   injury, employees will either be assigned work in a safe and healthy area in the same office or

8   deployed to another installation or granted an excused absence. SSA management acknowledges

9   that SSA is unable to prevent my exposure to fragrances and chemicals that all SSA could do in

10  SSA buildings was try and limit my exposure, proving SSA was aware I was being exposed

11  while I was in SSA buildings SSA acknowledges that even with the air purifier the room

12  continued to have fragrance and chemical odors that triggered my disability and therefore

13  proving the provided reasonable accommodations in the buildings are not as effective as the

14  reasonable accommodation of telework is, because in my home I can eliminate my exposure to

15  fragrances and chemicals see MSPB Hearing Transcript day 2 page 6 lines 21-25 page 7 lines 1-

16  4 and page 130 lines 22-25.

17

18

19  Date: _____        Sign Name: _____

20                                 Print Name: _____

21

22

23

24

25

26

27

28  TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **68** of **69**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

TITLE OF DOCUMENT: Supplement to Employment Discrimination Complaint CASE NO.:

Page No. **69 of 69**